**David RIGGINS, Plaintiff Below, Appellant,**

v.

**Charles A. MAURIELLO, D.O., Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: Jan. 21, 1992.
Decided: Feb. 21, 1992.

Ben T. Castle and Melanie K. Sharp of Young, Conaway, Stargatt & Taylor, Joseph J. Rhoades, Wilmington, for appellant.

John A. Elzufon of Elzufon, Austin & Drexler, P.A., Wilmington, for appellee.

Before HORSEY, MOORE and HOLLAND, JJ.

MOORE, Justice.

This medical malpractice action was brought by the appellant, David Riggins ("Riggins"), against Dr. Charles A. Mauriello, an osteopathic physician. Riggins appeals the Superior Court's denial of his motion for a new trial. The jury was given a standard charge, without objection from Riggins, that a "mere error of judgment" by a physician was not actionable. A verdict was returned in favor of Dr. Mauriello. In this motion for a new trial Riggins argued that the jury instruction on "mere error of judgment" was erroneous. The Superior Court concluded that in the absence of a timely exception, Riggins had waived his objections. Nonetheless, the trial judge recognized the infirmity in the

charge, and called on us to suggest its abandonment. We agree on both accounts. Thus, we direct the Superior Court to abandon further use of the charge as given here. In directing that the old charge be abolished, we must also recognize that its use in this case was plain error. Accordingly, we reverse the judgment of the Superior Court and remand the case for a new trial.

## I.

The basic facts are not in dispute. On October 26, 1982, Riggins fell from a roof while at work and fractured his right ankle. He was taken to Riverside Hospital where an admitting diagnosis was made by the attending physician, Dr. Ellis. Dr. Ellis notified Dr. Mauriello within 45 minutes of Riggins' admission. The latter arrived at the hospital three hours later. Due to swelling, Dr. Mauriello performed a closed reduction on the fracture, placing Riggins in a short-leg cast, and admitted him to the hospital.

Six days later Dr. Mauriello opened the leg and attempted to use the plate and screw method to repair the damage. However, due to excessive swelling, Dr. Mauriello was unable to complete the procedure or close the wound, as planned. Thus, Dr. Mauriello performed a limited internal fixation and placed a cast around the entire fracture site, including the extruding metal pins and open wound.

Riggins was discharged from the hospital on November 11, 1982. Between that date and May, 1983, he was readmitted or seen in the hospital emergency room at least seven times. On May 13, 1983, Dr. Mauriello determined that Riggins had developed osteomyelitis, an infection of the bone.[1] This was confirmed by another orthopedic surgeon, Dr. Hogan. Riggins was then transferred to the care of Dr. Esterhai of the University of Pennsylvania Hospital who attempted to control the infection, without success. On November 9, 1983, Dr. Esterhai amputated Riggins' leg below the knee.

Riggins filed this malpractice action against Dr. Mauriello on October 16, 1984. Trial began on January 28, 1991. The jury was charged, without objection from Riggins, and a verdict returned in favor of Dr. Mauriello. Riggins moved for a new trial. The parties disagree whether the papers submitted by Riggins in support of his motion actually challenged or objected to the jury instruction.[2] Dr. Mauriello contends that they did not, while Riggins argues that they did. In any case, Riggins does concede that no objection was made at trial.

At oral argument on the motion for a new trial Riggins challenged[3], though obliquely, the trial court's medical malprac-

---

**1.** There was testimony at trial that the infection probably resulted from germs, either traveling down the metal pins sticking through the skin, or entering through the open incisional wound.

**2.** Riggins' motion for a new trial stated that "[m]uch of the defendant's case was aimed at making the medical issues appear extremely complicated and centered on the argument that the doctor's 'judgment' was practically infallible. It is quite possible that the jury was confused about the application of the definition of medical malpractice under the Delaware statute when balanced against the proper exercise of medically acceptable judgment. This confusion, in conjunction with the presence of the contributory negligence charge, and the litany of accusations made throughout the trial ... could well account for jury misunderstanding and a verdict that was contrary to the compelling weight of the evidence and the interests of justice."

**3.** At oral argument on the motion, plaintiff's counsel stated that "in the context of what was argued by the defense and the instruction given to the jury, without objection from us, concerning the almost—the infallibility of physician judgment, in hindsight and foresight, I am going to take a different position regarding that instruction in other cases. But I—the fact that we did not specifically object to it does not mean that the Court is without the power in its discretion to order a new trial in the context of the medical complexity of this case and that instruction." Plaintiff's counsel then read aloud the instruction and continued. "That is language that was given at the request of the defendant and hammers in sentence after sentence after sentence the sanctity of the doctor's judgment. And I think it is or can be misleading and confusing to a jury, especially one that is dealing with complex issues, which this case presented. And the verdict that was rendered here is baffling in the context of some of the undisputed facts."

tice instruction.[4] Riggins disputed two passages, both of which occurred near the end of the lengthy instruction. First, Riggins contested the statement that it is not enough to prove malpractice if the "approach utilized by the defendant is regarded by some practicing within his specialty and in good standing in the community as an acceptable approach." Second, Riggins challenged the statement that "a physician cannot be liable for a *mere error of judgment* in deciding what to do or what not to do for the patient provided that he has done what he thinks is best in the exercise of reasonable care." (Emphasis added). Riggins argued that, in hindsight, these portions of the charge were misleading and confusing to the jury in dealing with the complex issues of the case.

The Superior Court fully considered Riggins' arguments. Although the trial judge expressed surprise at the verdict, he noted that there was competent expert testimony that Dr. Mauriello's treatment was within the applicable standard of care. The jury apparently accepted the testimony of Dr. Mauriello's experts over that of Riggins'. The trial judge further stated that the jury instruction given, including the portions complained of, had been used for years in the Superior Court. Thus, the court found that giving the instruction was not "obvious error"[5] and denied Riggins' motion for

---

4. The instruction given the jury stated:

The Delaware statute governing health care malpractice, which I mentioned to you earlier, provides, in pertinent part:

The standard of skill and care required of every health provider in rendering professional services or health care to a patient shall be that degree of skill and care ordinarily employed under similar circumstances by members of the profession in good standing in the same community or locality, and the use of reasonable care and diligence.

If you should find that Dr. Mauriello failed to provide that degree of skill and care ordinarily employed under similar circumstances by members of the profession in good standing in the same community or locality and that this failure was a proximate cause of the injury suffered by Plaintiff David Riggins, then your verdict must be for the plaintiff.

Now, deviation from the applicable standard of care may also be referred to as "professional malpractice." This standard of care is to be determined by you from the testimony of expert witnesses who testified in the case.

You may not speculate or conjecture about these standards or about what they are. They must be established by the testimony of expert witnesses.

Insofar as the Plaintiff complained Dr. Mauriello failed to comply with such standards, it is his burden of proof of such standards and also of the doctor's failure to adhere to those standards. This proof must be by a preponderance of the evidence.

The mere fact that a patient has suffered an injury while in the care of a physician does not mean that there was or has been negligence, or in this case, malpractice on the part of the physician.

It is not enough to prove medical malpractice on the part of a defendant in a medical malpractice case for the Plaintiff to show that some other physician would personally have acted any differently than the Defendant.

It is not sufficient for the Plaintiff to show that some other physician believes that there is an approach which would be better than that utilized by the Defendant, if nevertheless the approach utilized by the Defendant is regarded by some practicing within his specialty and in good standing in the community as an acceptable approach.

I instruct you that a physician cannot be held liable for a *mere error of judgment* in deciding what to do or what not to do for the *patient provided he* has done what he thinks is best in the exercise of reasonable care. (Emphasis added).

*No inference of malpractice arises from the mere fact that there was an undesirable result. Malpractice is never presumed. The law does not make a physician an insurer of the best result of his treatment.*

5. The trial court stated:

The other issue is whether or not that jury instruction standing alone was enough to grant a new trial.

The Court was surprised at the verdict. I just can't imagine having an open wound and then a cast put on it, but I'm not a doctor. Unfortunately, Doctor Hogan and Doctor Marvel ruled that or testified that that was appropriate. I can't imagine it being appropriate, but they set the standard of care, not a layman.

The jury apparently accepted the testimony of Doctor Marvel and Doctor Hogan over Doctor Greene. That's strictly a factual matter. The Court has no control over it. And I do not believe that the jury instruction created error that—obvious error.

It's also a jury instruction that has been used for years in this court. And I presume that's probably why the plaintiffs could not object to it, because it has been used for years. I think every medical malpractice jury instruction I have seen from all the other judges

a new trial. In doing so, however, the trial judge urged us to rectify continued use of the charge.

## II.

■■■ A party may not assign error to the giving of a jury instruction without an exception to the charge before the jury retires to consider its verdict, or within the time set by the trial court immediately thereafter. Super.Ct.Civ.R. 51. Only where the interests of justice so require may we review questions not properly presented to the trial court. Supr.Ct.R. 8.

"The failure to object at trial constitutes a waiver of the right to raise an issue on appeal unless the error is plain." *Culver v. Bennett*, Del.Supr., 588 A.2d 1094, 1096 (1991) (citing *Probst v. State*, Del.Supr., 547 A.2d 114, 119 (1988)). " 'Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process.' " *Id.* (citing *Wainwright v. State*, Del.Supr. 504 A.2d 1096, 1100 (1986). "While some inaccuracies and inaptness in statements are to be expected in any [jury] charge, this court will reverse if the alleged deficiency in the jury instructions undermined the jury's ability to intelligently perform its duty in returning a verdict." *Id.* (citing *Probst*, 547 A.2d at 119).

■■■ Turning to this record, it appears that the instruction was identical, in the parts complained of by Riggins, to the "MEDICAL MALPRACTICE" instruction submitted in Dr. Mauriello's proposed jury instructions. A conference to consider the

charge was held the night before the jury was instructed, yet Riggins did not object to the proposed instruction. Riggins also did not object to the instruction the next morning, either before or after the jury was charged. Neither did Riggins explicitly mention, although he claims otherwise, the instruction in the papers supporting his motion for a new trial. The instruction was challenged for the first time at oral argument on the motion for a new trial.

Clearly, Riggins did not timely object to the jury instruction. Super.Ct.Civ.R. 51. Thus, he must rely on principles of plain error. *Culver*, 588 A.2d at 1096.

■■■ The rather lengthy medical malpractice instruction, only a small portion of which is challenged, repeats longstanding Delaware law that a surgeon is bound to the same standards of care and competence as other surgeons in good standing ordinarily adhere to in the same or similar community. *DiFilippo v. Preston*, Del. Supr., 173 A.2d 333 (1961). The instruction also states the requirement, codified in 18 *Del.C.* § 6853, that the standard be established by expert witnesses.

■■■ We have never squarely addressed the issue of the propriety of the "mere error of judgment" language contained in the Superior Court's standard instruction. Dr. Mauriello cites numerous cases in other states which have upheld similar "judgment" language in medical malpractice cases.[6] Riggins also cites numerous cases which have struck down medical malpractice instructions containing passages similar to the "error of judgment" language.[7]

---

on my 22 years on the Bench has that language in it.

I think, under all of the circumstances, that did not create obvious error. And I must deny the application for the new trial. *I hope the Supreme Court rectifies the matter, that is, that jury instruction.* (Emphasis added).

**6.** *See Borka v. Emergency Physicians Professional Assoc.*, Minn.Ct.App., 379 N.W.2d 682 (1986); *Brault v. Kenmore Mercy Hosp.*, 142 A.D.2d 945, 530 N.Y.S.2d 369 (1988); *Fraijo v. Hartland Hosp.*, 99 Cal.App.3d 331, 160 Cal.Rptr. 246 (1979); *Miller v. Kennedy*, 91 Wash.2d 155, 588 P.2d 734 (1978); *Roach v. Hockey*, 53 Or.App. 710, 634 P.2d 249 (1981); *Smith v. Lerner*, Iowa

Supr., 387 N.W.2d 576 (1986); *Vasquez v. Markin*, 46 Wash.App. 480, 731 P.2d 510 (1987); *Watson v. Hockett*, 107 Wash.2d 158, 727 P.2d 669 (1986).

**7.** *See Kobos v. Everts*, Wyo.Supr., 768 P.2d 534 (1989); *Leazer v. Kiefer*, Idaho Supr., 821 P.2d 957 (1991); *Logan v. Greenwich Hosp. Ass'n*, 191 Conn. 282, 465 A.2d 294 (1983); *Magbuhat v. Kovarik*, S.D.Supr., 382 N.W.2d 43 (1986); *Ouellette v. Subak*, Minn.Supr., 391 N.W.2d 810 (1986); *Rogers v. Meridian Park Hosp.*, 307 Or. 612, 772 P.2d 929 (1989); *Schwab v. Tolley*, Fla.Ct.App., 345 So.2d 747 (1977); *Shamburger v. Behrens*, S.D.Supr., 380 N.W.2d 659 (1986); *Sleavin v. Greenwich Gynecology and Obstetrics*,

Our examination of these cases suggests that, on balance, the other jurisdictions are rather evenly split. Each case ultimately turns on peculiar variations in language and the context in which the "judgment" language is placed, as viewed by the reviewing court.

We have carefully reviewed the jury instruction which Riggins now challenges. In particular, we focus on the charge that "a physician cannot be liable for a mere error of judgment in deciding what to do or what not to do for the patient provided that he has done what he thinks is best in the exercise of reasonable care." In our opinion the "mere error of judgment" charge is undesirable and should be abandoned. A proper instruction should state that, when a physician chooses between appropriate alternative medical treatments, harm which results from the physician's good faith choice of one proper alternative over the other is not malpractice.

The "mere error of judgment" language thus permits too much. Under this standard, a jury could too readily conclude, incorrectly, that a physician is not liable for malpractice even if he or she is negligent in administering the treatment selected.

 While Riggins now challenges Dr. Mauriello's judgment in both his decision to perform a closed reduction on October 26th and his decision to attempt an open reduction six days later, the record discloses testimony and other evidence adduced at trial that Dr. Mauriello's course of treatment in each situation was within the applicable standard of care under the circumstances. The defendant's expert witnesses, Drs. Hogan, Marvel and Esterhai, so testified. Professional literature, supporting the procedures, also was placed in evidence. Thus, while Riggins' expert opined to the contrary, there is sufficient evidence upon this record to support Dr. Mauriello's defense that his choice of treatments in each circumstance was within the applicable standard of care.

In reviewing Riggins' clear failure to timely object to the instruction, the plain error standard of review must be applied. In our opinion the "mere error of judgment" language was inappropriate as a matter of law. Although the defendant contends that there is sufficient evidence in the record to support the jury's verdict, we must recognize that the jury's decision was rendered upon the charge we now abandon. Under these circumstances, we find that use of the old charge was a "deficiency ... [which] undermined the jury's ability to intelligently perform its duty in returning a verdict." *Culver*, 588 A.2d at 1098. Accordingly, plain error is shown on this record.

The judgment of the Superior Court is REVERSED and the matter is REMANDED for a new trial.

P.C., 6 Conn.App. 340, 505 A.2d 436 (1986), *rev. den.*, 199 Conn. 807, 508 A.2d 32 (1986); *Somer v. Johnson*, 704 F.2d 1473 (11th Cir.1983); *Teh Len Chu v. Fairfax Emergency Medical Assocs., Lt.*, 223 Va. 383, 290 S.E.2d 820 (1982); *Wall v. Stout*, 310 N.C. 184, 311 S.E.2d 571 (1984); *Watson v. McNamara*, 229 Neb. 1, 424 N.W.2d 611 (1988).