Hillsborough-southern judicial district
No. 99-188

NORMAND C. FRANCOEUR, ADMINISTRATOR OF THE ESTATE OF
JOYCE FRANCOEUR AND INDIVIDUALLY

v.

JURGEN PIPER, M.D. & a.

June 22, 2001

*Hall, Hess, Stewart, Murphy & Brown, P.A.*, of Manchester
(*Michael P. Hall* and *Francis G. Murphy, Jr.* on the brief, and *Mr.
Hall* orally), for the plaintiff.

*Bouchard & Mallory, P.A.*, of Hampton (*Robert D. Lietz* and
*Kenneth G. Bouchard* on the brief, and *Mr. Bouchard* orally), for the
defendants.

DUGGAN, J. The plaintiff, Normand C. Francoeur, individually and
as the administrator of the estate of his wife, Joyce Francoeur,
appeals following a jury verdict in Superior Court (*Brennan*, J.) in
favor of the defendants, Jurgen Piper, M.D. and his employer, the
Orthopaedic Center. The plaintiff argues that the trial court erred in

instructing the jury regarding the elements of medical negligence. We reverse and remand.

Mrs. Francoeur suffered a broken right ankle when she fell from her wheel chair as it veered off a ramp. At the time, she suffered from multiple complications associated with her diabetic condition. In the emergency room, Dr. Piper treated her ankle fracture by applying a cast. Later, upon removing the cast, Dr. Piper found an area of necrotic skin. Despite attempts to ward off infection, Mrs. Francoeur's leg became gangrenous and later was amputated. The plaintiff filed this medical malpractice claim alleging that Dr. Piper failed to act according to the standard of reasonable professional practice in his treatment of Mrs. Francoeur's fractured ankle. *See* RSA ch. 507-E (1997); *Leighton v. Sargent*, 27 N.H. 460, 475 (1853). He specifically alleged that Dr. Piper's failure to appropriately treat the infection in Mrs. Francoeur's leg resulted in its amputation.

On appeal, the plaintiff raises two issues regarding the jury instructions given at trial. He first claims the trial court erred in instructing the jury on common law professional negligence. The trial court gave the standard jury instructions defining malpractice, professional negligence, and standard of care. *See* N.H. CIVIL JURY INSTRUCTIONS 3D. §§ 13.1—13.3 (2000). The trial court also instructed the jury on the burden of proof as defined by RSA 507-E:2, I (1997). *See also* N.H. CIVIL JURY INSTRUCTIONS 3D. § 13.6 (2000). The plaintiff argues that RSA chapter 507-E abrogated all common law in a medical malpractice claim because RSA 507-E:1 (1997) broadly defines medical injury to include all actions "whether arising from negligence, error, omission . . . or otherwise arising out of or sustained in the course of [providing medical] services." Therefore, he asserts the trial court should have limited its instructions to the language set forth in RSA 507-E:2, I, because the legislature intended to supersede all common law causes of action for medical malpractice including negligence. He contends that because he "never argued the case in terms of negligence," the court erred in instructing the jury on common law professional negligence. We disagree.

RSA chapter 507-E contains two sections. The first section provides definitions for terms used in the statute. "Medical injury" is defined as

> any adverse, untoward or undesired consequences arising out of or sustained in the course of professional services rendered by a medical care provider, whether resulting from *negligence*, error, or omission in the performance of

such services; from rendition of such services without informed consent or in breach of warranty or in violation of contract; from failure to diagnose; from premature abandonment of a patient or of a course of treatment; from failure to properly maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services.

RSA 507-E:1 (emphasis added). Medical injury actions covered by the statute include, but are not limited to, actions based on negligence. *Cf. Lord v. Lovett*, 146 N.H. 232, 237 (2001). Negligence, a common law cause of action, *Leighton*, 27 N.H. at 475, is not further defined in the statute.

The second section sets forth specific requirements for meeting the burden of proof for any action in medical injury:

I. In any action for medical injury, the plaintiff shall have the burden of proving by affirmative evidence which must include expert testimony of a competent witness or witnesses:

(a) The standard of reasonable professional practice in the medical care provider's profession or specialty thereof, if any, at the time the medical care in question was rendered; and

(b) That the medical care provider failed to act in accordance with such standard; and

(c) That as a proximate result thereof, the injured person suffered injuries which would not otherwise have occurred.

RSA 507-E:2, I.

The express purpose of this section is to specify the kind of evidence a plaintiff must present at trial. It requires a plaintiff to provide expert testimony to prove each of the elements supporting a claim. The plaintiff agrees that he "argued and presented evidence concerning what the standard of care was; that that standard of care had been breached; and that that breach caused injuries that otherwise would not have occurred." Although the plaintiff asserts that this claim does not sound in negligence, these are precisely the elements of a common law professional negligence claim. *See Leighton*, 27 N.H. at 475; *see also Bronson v. Hitchcock*, 140 N.H. 798, 801 (1996). Thus, in this case the plaintiff cannot claim the court erred in instructing the jury on negligence simply because he chose to avoid using the word "negligence" in pleading and presenting his case.

■ We also find no support for the plaintiff's argument that the legislature intended RSA 507-E:2, I, to modify the elements of a medical malpractice claim such that breaching the standard of care no longer is synonymous with negligence. The plaintiff contends this purported change means that the trial court erred when it explained the law regarding a breach of the standard of care in terms of negligence. This error, he argues, impermissibly included an element of negligence, not required by the language specifically set forth in RSA 507-E:2, I. Both the language and history of RSA 507-E:2, I, demonstrate that the legislature did not intend such a result.

In 1977, the legislature enacted RSA chapter 507-C (1997), a "comprehensive system of recovery in the field of medical negligence." *Carson v. Maurer*, 120 N.H. 925, 946 (1980). In doing so, "the legislature sought to contain the costs of the medical injury reparations system by revising and codifying the applicable tort law." *Id.* at 930; *see also* Laws 1977, 417:1. We subsequently held that "significant provisions of RSA chapter 507-C [were] unconstitutional." *Carson*, 120 N.H. at 945. Because "we [were] not sure that the remaining provisions of RSA chapter 507-C would have been enacted without the rest, . . . [we] declare[d] the [entire] chapter void." *Id.*

In 1986, the legislature enacted RSA chapter 507-E. *See* Laws 1986, 227:4. The language of RSA 507-E:2, I, essentially is a re-enactment of RSA 507-C:2, I (1997). The legislative bill that included RSA 507-E:2, I, was entitled "An Act Relative to Tort Reform and Insurance." Laws 1986, ch. 227. RSA 507-E:2 is entitled "Burden of Proof," and sets forth the following standard: "[T]he plaintiff *shall* have the burden of proving by affirmative evidence which *must* include *expert* testimony of a *competent* witness [to prove the standard of care, breach of the standard of care, and causation]." RSA 507-E:2, I (emphasis added). This language, read in light of a clear legislative intent to contain the costs associated with medical malpractice claims, supports the conclusion that rather than lowering the burden for plaintiffs, the legislative purpose was to impose strict evidentiary requirements. The legislative history provides no support for the plaintiff's reading of the statute. Consequently, we reject the plaintiff's claim that the trial court erred in instructing the jury on negligence.

Second, as a separate issue concerning the instructions on negligence, the plaintiff objected to the trial court's instruction that "[a] mere error in judgment, made in the proper exercise of judgment, is not professional negligence." On appeal, the plaintiff

contends that when the jury considers the proper standard of care, an error of judgment is negligence, and without further explaining what constitutes the "proper exercise of judgment," the instruction "allowed the jury to erroneously conclude that bad judgment based on ignorance could not be a basis for liability as long as Dr. Piper genuinely cared about [Mrs.] Francoeur."

In determining whether a defendant has met the applicable standard of care, the jury shall consider whether the defendant, having the knowledge and skill to act as a professional, "neglected to apply [that knowledge and skill] with such care and diligence as in his judgment, *properly exercised*, the case must have appeared to require; in other words that he neglected the proper treatment from inattention and carelessness." *Morrill v. Tilney*, 128 N.H. 773, 779-80 (1986); *see* RSA 508:13 (1997). Due care, however, may permit a doctor to exercise judgment in choosing among several courses of treatment. "The error-of-judgment rule . . . stems in part from the recognition that if there is more than one acceptable treatment option, then the selection of any one of them is not negligence. Thus, a doctor is not liable for untoward results if he or she used reasonable care in selecting one of those options." *Rogers v. Meridan Park Hospital*, 772 P.2d 929, 930-31 (Or. 1989).

In this case, the defendants assert that in the course of treating Mrs. Francoeur, Dr. Piper had multiple options from which to choose, each of which met the standard of care, and the fact that the option he chose resulted in Mrs. Francoeur's amputation does not, standing alone, constitute negligence. The defendant argues that instructing the jury that "[a] mere error in judgment, made in the proper exercise of judgment, is not professional negligence" was a correct statement of the law. We agree that when various methods of treatment for a particular medical condition exist, all of which meet the standard of reasonable professional practice, then choosing the best method is a matter of professional judgment. *Cf. Morrill*, 128 N.H. at 779-80.

In explaining the law, the trial court should avoid instructions that are reasonably capable of confusing or misleading the jury. *See Stanley v. Walsh*, 128 N.H. 692, 694 (1986). Although the "mere error of judgment" instruction may be a correct statement of the law, a growing number of courts have criticized similar instructions in recent years. *See Rogers*, 772 P.2d at 931 (holding word "error" when used with "exercise of judgment" suggests substandard conduct permissible); *DiFranco v. Klein*, 657 A.2d 145, 148-49 (R.I.

1995) (holding "good faith" and "honest error in judgment" instructions erroneously imply only bad-faith and dishonest deviations actionable); *Deyo v. Kinley*, 565 A.2d 1286, 1292-93 (Vt. 1989) (noting "error in judgment" language is basically ambiguous and subjective); *Logan v. Greenwich Hosp. Ass'n*, 465 A.2d 294, 303 (Conn. 1983) (noting "bona fide error in Judgment" instruction confusing because it implies only an error in judgment made in bad faith actionable); *Ouellette by Ouellette v. Subak*, 391 N.W.2d 810, 816 (Minn. 1986) (rejecting "honest error in judgment" instruction as inappropriately imposing subjective language when defining standard of care); *Riggins v. Mauriello*, 603 A.2d 827, 830-31 (Del. 1992) (holding "mere error of judgment" instruction permits jury to incorrectly conclude physician may not be liable even if negligent); *Parodi v. Washoe Medical Ctr.*, 892 P.2d 588, 591 (Nev. 1995) (noting "error-in-judgment" instructions may improperly focus jury on subjective intentions rather than objective standard of care); *Hirahara v. Tanaka*, 959 P.2d 830, 834-35 (Haw. 1998) (rejecting use of "error in judgment" because language inadequately explains law). *But see Watson v. Hockett*, 727 P.2d 669, 673 (Wash. 1986) (warning "error of judgment" instruction should be given in limited circumstances with caution).

The "mere error of judgment" instruction is reasonably capable of confusing or misleading the jury in two ways. First, the instruction improperly introduces a subjective element regarding the standard of care. The defendant in a medical negligence case is measured against the standard of reasonable professional practice. *See* RSA 507-E:2, I(a); *Bissett*, 142 N.H. at 791. This reasonableness standard is an objective standard, *Bernard v. Russell*, 103 N.H. 76, 77 (1960), and therefore the defendant's mental state is not an issue to be considered by the jury. *See Richardson v. Chevrefils*, 131 N.H. 227, 232 (1988). The "mere error of judgment" instruction suggests that some errors are not actionable. In determining which errors are more than a "mere error," the jury may improperly conclude that only errors made in bad faith are actionable. *See DiFranco*, 657 A.2d at 148. This could invite the jury to improperly consider the subjective intentions of the defendant at the time he rendered treatment. *See Parodi*, 892 P.2d at 591.

Second, by using the word "mere," the instruction implies that some errors, which fall below the standard of care, are not serious enough to be actionable. This could lead the jury to conclude

incorrectly that a defendant is not liable for malpractice even if he is negligent. *Cf. Riggins*, 603 A.2d at 831. Because the "mere error of judgment" instruction is reasonably capable of confusing or misleading the jury regarding the reasonable standard of professional practice and whether a defendant failed to act in accordance with that standard, the trial court erred by so instructing the jury. *Cf. Dyer v. Herb Prout & Co.*, 126 N.H. 763, 765-66 (1985).

As we observed earlier, other jurisdictions have rejected similar instructions. One such court, however, approved the following language to explain the law adequately without confusing or misleading the jury.

> A doctor is not negligent simply because his or her efforts prove unsuccessful. The fact that a doctor may have chosen a method of treatment that later proves to be unsuccessful is not negligence if the treatment chosen was an accepted treatment on the basis of the information available to the doctor at the time a choice had to be made; a doctor must, however, use reasonable care to obtain the information needed to exercise his or her professional judgment, and an unsuccessful method of treatment chosen because of a failure to use such reasonable care would be negligence.

*Ouellette by Ouellette*, 391 N.W.2d at 816.

■ The remaining question is whether the erroneous jury instruction requires reversal. We apply a two-step analysis to determine whether to reverse a jury verdict in a civil case based on an erroneous jury instruction. First, the plaintiff must show that it was a substantial error such that it could have misled the jury regarding the applicable law. *See Chellman v. Saab-Scania AB*, 138 N.H. 73, 80 (1993); *Kallgren v. Chadwick*, 134 N.H. 110, 117 (1991). In reviewing the instructions, we consider the jury charge as a whole to determine whether the instructions "fairly present[ed] the case to the jury in such a manner that no injustice [was] done to the legal rights of the litigants." *Broderick v. Watts*, 136 N.H. 153, 163 (1992) (quotation and citation omitted). In this case, the plaintiff alleged that throughout the course of treating Mrs. Francoeur, Dr. Piper failed to adequately take notice of her diabetic condition and the complications associated with it. If the jury found that Dr. Piper met the appropriate standard of care for repairing ankle fractures but was ignorant of the effect her diabetes may have had on the course

of treatment, the "mere error of judgment" instruction could have caused the jury to mistakenly conclude that negligence regarding Mrs. Francoeur's diabetic condition was not a breach of the standard of care. Thus, we conclude that the erroneous jury instruction was a substantial error that could have misled the jury when it determined whether Dr. Piper failed to meet the standard of care. The defendants do not assert and we cannot find anything in the remaining instructions curing this error, and therefore the instructions as a whole did not fairly present the case to the jury.

Having concluded the error was a substantial error we will reverse the jury verdict unless the defendants show that the error did not affect the outcome below. *See Winslow v. Dietlin*, 100 N.H. 147, 149 (1956); *Cyr v. J.I. Case Co.*, 139 N.H. 193, 196-97 (1994). The defendants assert that even if Dr. Piper failed to meet the standard of care in treating the fractured ankle, the plaintiff failed to produce sufficient evidence to prove that the severity of the fracture coupled with Mrs. Francoeur's diabetic condition alone would not have resulted in the leg's amputation, and therefore the plaintiff failed to prove medical causation. On the verdict form, the jury indicated that the evidence did not "establish[] that it is more likely than not that the defendant was legally at fault to any degree." Because legal fault, in this case, included both violating the standard of care and causation, it is unclear whether the erroneous jury instruction affected the outcome. On the issue of medical causation, the plaintiff presented evidence through its expert, Dr. Marvin Levin. Dr. Levin opined that with proper care Mrs. Francoeur's leg would not have been amputated. Following presentation of the plaintiff's case, the trial court denied the defendants' motion for a directed verdict. While Dr. Levin's testimony was not uncontroverted, it was for the jury to decide whether to accept or reject the testimony of the witnesses, in whole or in part. *See Morrill*, 128 N.H. at 780. On the record presented here, we cannot say a reasonable jury could not find medical causation. Therefore, we cannot hold that the error did not affect the outcome and remand.

Other issues raised by the plaintiff appear unlikely to arise in a new trial and so we decline to address them.

*Reversed and remanded.*

BROCK, C.J., and BRODERICK and NADEAU, JJ., concurred.