NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough – northern judicial district
No. 2011-500


THE STATE OF NEW HAMPSHIRE

v.

JOSHUA SPRAGUE

Argued: September 12, 2013
Opinion Issued: January 17, 2014


Michael A. Delaney, attorney general (Susan G. Morrell, senior assistant attorney general, and Benjamin J. Agati, assistant attorney general, on the brief, and Ms. Morrell orally), for the State.

David M. Rothstein, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.


BASSETT, J. The defendant, Joshua Sprague, appeals his convictions, following a jury trial, for first-degree murder, burglary, and conspiracy to commit burglary. See RSA 630:1-a, I(b)(2) (2007); RSA 635:1 (2007); RSA 629:3 (2007). On appeal, he argues that the Superior Court (Tucker, J.) erred when it: (1) instructed the jury regarding his state of mind defense; (2) denied his motion for a mistrial; (3) ruled that he had opened the door to rebuttal testimony; and (4) sentenced him for murder in the course of a burglary, as well as for the underlying burglary. We affirm in part and vacate in part.

The jury could have found the following facts. In October 2009, Elena Hann met with the defendant in order to sell him marijuana. After two failed attempts to consummate a sale, the defendant accused Hann of trying to set him up and threatened to harm her. Several days later, Hann discovered that the apartment which she shared with the victim had been burglarized. Because she suspected that the defendant was the perpetrator, Hann, accompanied by friends, went to the defendant's apartment. The defendant was not at home at the time. As they were leaving the apartment, one of Hann's friends threatened to harm the defendant's dog.

The defendant later was told that Hann and her friends had broken into his apartment and was also told about the threat to his dog. He was angry and afraid that Hann and her friends would return. The defendant decided to confront Hann. Armed with a handgun, he, together with several companions, walked to Hann's apartment building. When they arrived, they saw the victim. One of the defendant's companions yelled, "Shoot that n****r." The defendant chased the victim out of the apartment building and down the street. The defendant yelled to the victim to stop. The victim stopped, turned and raised his hands, and said, "I don't even know her." One of the defendant's companions screamed, "Shoot that mother f****r." The defendant then fired multiple shots at the victim, who died at the scene. The defendant testified that when the victim raised his hands, the defendant thought that he had a gun. Although the police found a cellular telephone next to the victim's body, they did not find a weapon. The defendant testified that prior to the incident, he was drinking, and using marijuana, cocaine, heroin, and Percocet.

The defendant ran from the scene and disposed of his gun. Several days after the shooting, the defendant and his friends fled to Massachusetts, where the police located him and took him into custody.

The defendant was charged with alternate counts of first-degree murder alleging that he purposely or knowingly caused the death of the victim. He was also charged with second-degree murder, alleging that he recklessly caused the death of the victim, thus manifesting an extreme indifference to the value of human life. He was additionally charged with burglary and conspiracy to commit burglary. At trial, the defendant admitted that he shot and killed the victim, but claimed that he did not have the mens rea necessary to establish either first or second-degree murder. The jury acquitted the defendant of first-degree murder committed purposely, but found him guilty of first-degree murder committed knowingly during a burglary, burglary, and conspiracy to commit burglary. He was sentenced on the first-degree murder conviction to life in prison without eligibility for parole. On both the burglary and conspiracy to commit burglary convictions, he was sentenced to seven and one-half to fifteen years imprisonment, concurrent with each other, as well as with the first-degree murder sentence. This appeal followed.

On appeal, the defendant argues that the trial court erred in its instruction to the jury regarding his mistaken perception that the victim had a gun. He also contends that the trial court erred in denying his motion for a mistrial or for more detailed curative instructions after a relative of the victim had an outburst in the courtroom. He further argues that the court erred in ruling that he had opened the door to rebuttal evidence offered by the State concerning when the defendant learned that the victim had died. Finally, he asserts that in violation of his double jeopardy rights, the court erroneously sentenced him for murder in the course of burglary as well as for the underlying burglary. We address these arguments in turn.

I.      Jury Instructions

The defendant argues that the trial court violated his due process rights under the State and Federal Constitutions when it instructed the jury that the defendant's claimed misperception that the victim had a gun could not be used as evidence of self-defense, and failed to instruct the jury that the defendant's claimed misperception could be relevant to the defendant's mental state defense. We disagree.

The defendant testified at trial that, when the victim spun around and raised his hands, he mistakenly thought that the victim had a gun. In closing, the defendant argued to the jury that his drug and alcohol induced intoxication contributed to his misperception and caused him to act recklessly, rather than purposely or knowingly. He also argued that his belief that the victim possessed a gun led to panic and fear, and that, out of a concern for "self preservation," he recklessly fired.

Following closing arguments, the defendant objected to the court instructing the jury that it could not consider the defendant's misperception that the victim had a gun as evidence of self-defense in the absence of an instruction explaining to the jury that it could consider his misperception with respect to his mens rea at the time of the crime.

The trial court denied the defendant's request and instructed the jury that were it to "accept [the defendant's testimony that he thought the victim was holding a gun,] you may not consider it as evidence that the Defendant acted in self defense." The trial court explained that this instruction was necessary to avoid confusing the jury because the defendant's argument that he had acted out of a concern for self-preservation "came very close to arguing self defense." It declined to add the defendant's suggested language, stating: "I'm telling the jury how it may not use the evidence. I'm not telling the jury how it may use the evidence."

On appeal, the defendant does not dispute that self-defense was not a valid defense in this case, nor does he challenge the propriety of the instruction

3

given by the trial court. Rather, he argues that the instruction failed to inform the jury that his testimony regarding his misperception that the victim had a gun could be relevant to his mental state. As a result, he contends that the instruction unfairly prejudiced his defense because it "made clear the forbidden use of the 'perception of a gun' evidence (self-defense) without clarifying its permissible use (mental state defense)."

We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). "When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case." State v. Hernandez, 159 N.H. 394, 400 (2009). "We determine whether the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case." Id. "Whether a particular jury instruction is necessary, and the scope and wording of jury instructions, are within the sound discretion of the trial court." Id. "To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." State v. Lambert, 147 N.H. 295, 296 (2001) (quotation omitted).

Upon review of the instructions in their entirety, we find no error. A reasonable juror would have understood that the jury could consider the defendant's misperception for all purposes except self-defense. Notably, immediately after the defendant testified that he believed that the victim had a gun, the trial court instructed the jury that, while it could not use the defendant's testimony as evidence that the defendant acted in self-defense, "[a]s with any witness, if you believe this witness' testimony, you may give it such weight as you think proper." Furthermore, in the final jury instructions, the trial court repeatedly instructed the jury to consider all of the evidence. The trial court explained: (1) "[w]hen you have considered and weighed all of the evidence you must make one of the following findings with respect to each crime charged"; (2) "[y]ou should carefully scrutinize all the testimony given"; and (3) "[y]ou will consider all of the facts and circumstances in evidence to determine which of the witnesses are worthy of belief." (Emphases added.) Further, the trial court instructed the jury that the State had the obligation to prove each element of each of the charged crimes, including the relevant mens rea. Thus, in view of the jury instructions in their entirety, a reasonable juror would have understood that he or she had to consider all of the evidence when determining the defendant's state of mind, including the defendant's testimony that he shot the victim because he believed that the victim had a gun.

Moreover, the defendant does not dispute that the trial court properly instructed the jury on the elements of first-degree murder, second-degree murder, and the lesser-included crime of manslaughter, and provided accurate

4

definitions of the <u>mens</u> <u>rea</u> of "purposely," "knowingly," and "recklessly." Because the State did not object to the instruction on the lesser included offense of reckless manslaughter, we need not decide whether the defendant's version of the events was sufficient to entitle him to a reckless manslaughter instruction. If the jury had believed that the prosecution did not prove beyond a reasonable doubt that the defendant acted purposely or knowingly, the jury could have convicted him of second-degree murder or manslaughter.

A defendant does not have the right to a particular jury instruction "when he simply presents evidence of a different factual scenario than that presented by the State." <u>Cf</u>. <u>State v. Noucas</u>, 165 N.H. 146, 155-56 (2013) (quotation omitted) (finding that trial court did not err in failing to instruct jury in accordance with model jury instructions on self-defense and defense of another when defendant merely presented evidence of a different factual scenario than the State). Here, although the defendant admitted that he shot and killed the victim, he asked the jury to believe his testimony that, because of his misperception that the victim had a gun, he had acted recklessly, rather than purposely or knowingly. Under these circumstances, the trial court did not err in declining to specifically instruct the jury that it could consider the defendant's misperception as evidence of his <u>mens</u> <u>rea</u> at the time of the crime. <u>See</u> <u>State v. Furgal</u>, 164 N.H. 430, 437 (2012) (jury instruction did not need to expressly inform jury it could consider particular evidence in a manner favorable to defendant); <u>State v. Shannon</u>, 125 N.H. 653, 662-63 (1984) (finding that trial court did not err in declining to give instruction that would support defendant's theory of the case).

The defendant cites <u>Francoeur v. Piper</u>, 146 N.H. 525 (2001), in support of his argument that while a jury instruction may be legally correct, it is improper if it misleads or confuses the jury. In <u>Francoeur</u>, we held that the trial court's jury instruction in a medical malpractice suit — that "a mere error in judgment, made in the proper exercise of judgment, is not professional negligence" — although perhaps an accurate statement of the law, was reasonably capable of confusing or misleading the jury about the reasonable standard of professional practice. <u>Francoeur</u>, 146 N.H. at 528-31. Here, however, the instruction was not likely to mislead or confuse the jury. The trial court did not prohibit the jury from considering the defendant's claimed misperception when assessing his state of mind at the time of the crime. It merely prohibited the jury from considering his claimed misperception as evidence of self-defense. Thus, <u>Francoeur</u> is inapposite.

Accordingly, we conclude that the jury instructions, considered in their entirety, did not prevent the jury from considering the defendant's claimed misperception for purposes of establishing his state of mind at the time of the crime. Therefore, the trial court's refusal to give the requested instruction was not an unsustainable exercise of discretion and did not unfairly prejudice the defendant in violation of his right to due process.

As the Federal Constitution offers the defendant no greater protection than the State Constitution under these circumstances, see United States v. Park, 421 U.S. 658, 674-75 (1975); State v. Littlefield, 152 N.H. 331, 342 (2005), we reach the same result under the Federal Constitution as we do under the State Constitution.

II.     Motion for Mistrial

The defendant next argues that the trial court erred when it denied his request for a mistrial and failed to give a more expansive curative instruction following an emotional outburst in the courtroom. While a witness was testifying, a relative of the victim uttered: "This is b******t . . . . "This is b******t, mother f****r. I'm going to get you." The incident lasted approximately ten seconds. Notably, the trial judge did not hear the statements. The relative was removed from the courtroom, and the trial court excused the jury.

Immediately thereafter, the court informed counsel that it intended to instruct the jury to "disregard what happened [because] [i]t's not part of the evidence in the case." The defendant moved for a mistrial. The court denied the motion, explaining, "I don't think . . . there's any reason to think the jury won't decide the case based solely on the evidence and the law."

The defendant then requested that the trial court expand upon its proposed instruction by including "words to the effect of, you know, this is the reason why we go through the extensive process of picking an impartial jury . . . so that, you know, passions are not arisen that influence the decision-making process." Although the trial court denied the defendant's request, it offered to question each juror as to whether he or she could disregard the outburst. The defendant declined the court's offer. Accordingly, upon the jury's return to the courtroom, the trial judge instructed the jurors to disregard the outburst, explaining:

> You have to decide this case based on the evidence that you receive during the trial and the law that I'll give you at the end of the case. You can't let any other factors influence your verdict. So keep it out of your mind. [The outburst] shouldn't play any role in your decision-making process.

"Mistrial is the proper remedy only if the evidence or comment complained of was not merely improper, but also so prejudicial that it constitutes irreparable injustice that cannot be cured by jury instructions." State v. Neeper, 160 N.H. 11, 15 (2010) (quotation omitted). "When reviewing a trial court's ruling on a motion for mistrial, we recognize that the trial court is in the best position to gauge the prejudicial nature of the conduct at issue and has broad discretion to decide whether a mistrial is

6

appropriate." State v. Ainsworth, 151 N.H. 691, 698 (2005). "We will not overturn the trial court's decision on whether a mistrial or other remedial action is necessary absent an unsustainable exercise of discretion." Id.

On appeal, the defendant argues in essence, as he argued before the trial court, that the court erred when it denied the motion for a mistrial because "the image of a family member of the victim expressing animosity toward him could not be erased by a jury instruction."

We find State v. Guay, 162 N.H. 375 (2011), to be instructive. In Guay, while the defendant was testifying, the victim shouted that the defendant was a liar. Guay, 162 N.H. at 378. The defendant appealed the court's denial of his request for a mistrial, arguing that the outburst exposed the jury to inadmissible evidence — the victim's opinion of the defendant's character. Id. We upheld the trial court's ruling, concluding that, given the conflicting testimony of the victim and the defendant, "it could hardly have been a surprise to the jury that the victim did not believe the defendant to be testifying truthfully. Moreover, credibility issues are within the jury's province, and it could reasonably have concluded that the defendant lied during his testimony." Id. at 379.

Here, we conclude that the outburst was not so prejudicial as to constitute an irreparable injustice. See State v. Ploof, 165 N.H. 113, 119 (2013). The relative did not comment on the character or truthfulness of the defendant, nor did he address the sole contested issue at trial — the defendant's mental state when he shot the victim. The court never told the jury that the speaker was a relative of the victim. Moreover, as in Guay, it could not have been a surprise to the jury that someone was angry with the defendant in light of the defendant's admission that he shot the victim.

Our conclusion is consistent with the analyses adopted by courts in other jurisdictions that have confronted similar circumstances. See People v. Chatman, 133 P.3d 534, 553 (Cal. 2006) (concluding that "prejudice is not presumed" when outbursts by the victim's mother were unrelated to defendant's guilt or innocence and "provided the jury with no significant information it did not already know or might not readily surmise. Even without observing [victim's mother] in person, any reasonable juror would know that the crime had caused the victim's family anguish." (quotation omitted)); Gamboa v. State, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (concluding that "[n]othing in the record suggests that the [family member of victim's] outburst was of such a nature that the jury could not ignore it and fairly examine the evidence in arriving at a verdict").

Moreover, the trial court's curative instruction directed the jury to disregard the outburst. The trial court instructed the jury to decide the case solely on the evidence and not "any other factors." See Guay, 162 N.H. at 379

7

(upholding trial court's denial of mistrial, in part, because court instructed jury to ignore victim's outburst during defendant's testimony). We presume that the jury followed these instructions. State v. Russo, 164 N.H. 585, 591 (2013).

The defendant further contends that the trial court erred in failing to include a more detailed instruction "addressing the fact that passion cannot enter into the decision-making process." We disagree. "The defendant is not entitled to have the court use the exact words of requested instructions." State v. Crie, 154 N.H. 403, 406 (2006). Here, although the instruction did not include specific language telling the jury that it could not decide this case based on passion, it clearly directed the jury to disregard the outburst in its decision-making process. This instruction was, in substance, the curative instruction that the defendant had requested.

To the extent that the defendant argues that the trial court's denial of his request for a mistrial violated his right to due process and a fair trial under the State and Federal Constitutions, he has not adequately developed this argument for our review, so we decline to address it. See State v. Euliano, 161 N.H. 601, 608 (2011).

Accordingly, we conclude that the trial court sustainably exercised its discretion when, after the outburst, it denied the defendant's request for a mistrial and for a more detailed instruction.

III. Rebuttal Witness

The defendant next contends that the trial court erred when it permitted the State to call a rebuttal witness to impeach the defendant's testimony. The defendant testified that, although he had watched televised news reports of the shooting before he fled to Massachusetts, he did not learn that the victim had died until days later when he saw a subsequent news report. After the defense rested, the State sought to recall a witness to impeach the defendant's testimony as to when he learned that the victim had died. The defendant objected, arguing that the testimony was inadmissible under New Hampshire Rules of Evidence 403, 608, and 613. The trial court overruled the objection.

On appeal, the defendant argues that the trial court erred in ruling that the defendant's testimony had opened the door to the rebuttal testimony. He contends that the testimony was inadmissible because he did not create a misleading impression, nor did the State's rebuttal witness directly contradict his testimony. The State counters that the testimony was admissible, and that even if the court erred in admitting it, the error was harmless beyond a reasonable doubt.

We need not determine whether the trial court properly admitted the rebuttal testimony because, even assuming error, we conclude that the error

was harmless beyond a reasonable doubt.  The State bears the burden of proving that an error is harmless, a burden satisfied by proof, beyond a reasonable doubt, that the erroneously admitted evidence did not affect the verdict.  See State v. Prudent, 161 N.H. 320, 323 (2010).  In deciding whether the State has met its burden, we consider the strength of the alternative evidence presented at trial.  See State v. Vandebogart, 139 N.H. 145, 158 (1994).  We also consider the character of the inadmissible evidence, including whether the evidence was cumulative or inconsequential in relation to the strength of the State's evidence.  See id.

Here, the State's alternative evidence of the defendant's guilt was overwhelming.  The evidence included:  a series of video recordings showing the defendant chasing the victim down the street, as well as the testimony of an eyewitness that the defendant shot the victim three to four times after the victim had raised his hands.  The witness, who did not know either the victim or the defendant, testified that the victim was not holding a cellphone, a gun, or anything else, when he was shot.

The alternative evidence of guilt also included testimony that the defendant acted knowingly.  The defendant admitted that he was angry with Hann and texted her a threatening message prior to the shooting.  Several of the defendant's companions testified that the group intended to assault Hann.  They also testified that members of the group armed themselves, and were ready to fight.

Moreover, the challenged testimony was cumulative given that the State had introduced substantially the same evidence in its direct case.  A witness had previously testified that several individuals, including the defendant, were watching the news on the morning after the shooting and that the television news broadcast reported the victim's death.  See State v. Garcia, 162 N.H. 423, 434-35 (2011) (finding disputed evidence cumulative because defendant repeatedly testified to substance of the challenged evidence).

Further, the challenged rebuttal testimony was inconsequential.  The defendant had previously admitted that he had watched the news on the morning after the shooting, so the jury had a basis independent of the rebuttal testimony from which it could have reasonably inferred that the defendant knew that the victim had died.  The rebuttal testimony was not lengthy:  it lasted for fewer than three minutes.  The State utilized the rebuttal testimony to attack the defendant's credibility during only a short portion of its closing argument.  Moreover, other evidence undermined the defendant's credibility: he admitted that he had lied to the police about where he was at the time of the shooting.  See State v. Barnes, 150 N.H. 715, 718 (2004) (impeachment of defendant with respect to three inconsistent statements was rendered inconsequential when State introduced evidence of defendant's numerous prior

convictions).  Although the defendant argues that the timing of the rebuttal testimony rendered it especially prejudicial, we are not persuaded.

In light of the State's alternative evidence, the cumulative nature of the challenged evidence, and the limited manner in which the State used it, we conclude, beyond a reasonable doubt, that the rebuttal testimony did not affect the jury's verdict.  We therefore hold that, even if there was error, the admission of the challenged testimony was harmless.

IV.     Double Jeopardy

The defendant also argues, and the State concedes, that the imposition of sentences for both first-degree murder in the course of burglary and burglary violated the Double Jeopardy Clauses of the New Hampshire and the United States Constitutions.  See N.H. CONST. pt. I, art.16; U.S. CONST. amends. V, XIV.  He argues that because the crime of burglary does not contain an element which is not also contained in the first degree murder charge, he was placed in double jeopardy when he was sentenced for both the lesser-included offense and the greater offense.  We agree.  Thus, we vacate the sentence for the burglary conviction.

Affirmed in part;
vacated in part.

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.

10