**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2013-0257, <u>State of New Hampshire v. Donald J. Freese</u>, the court on August 12, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  See <u>Sup. Ct. R.</u> 18(1).  We affirm.

The defendant, Donald Freese, appeals his convictions on one count of accomplice to simple assault, <u>see</u> RSA 631:2-a (2007); RSA 626:8 (2007), and one count of criminal threatening with a deadly weapon, <u>see</u> RSA 631:4 (2007); RSA 625:11 (2007).  Because the jury found that the defendant was motivated to commit the crime of simple assault because of hostility toward the victim's race, the charge was subject to enhanced penalties.  <u>See</u> RSA 651:6, I(f) (2007).  The defendant argues that the Superior Court (<u>Smukler</u>, J.) erred in:  (1) denying his motions for a mistrial; and (2) admitting eyewitness testimony that the defendant's conduct was motivated by racism.

The defendant first argues that the trial court erred in denying his motions for a mistrial.  "A mistrial should be granted only with the greatest caution, under urgent circumstances, and for very plain and obvious causes."  <u>Petition of Brosseau</u>, 146 N.H. 339, 341 (2001) (quotation omitted).  "Mistrial is the proper remedy only if the evidence or comment complained of was not merely improper, but also so prejudicial that it constitutes an irreparable injustice that cannot be cured by jury instructions."  <u>State v. Hearns</u>, 151 N.H. 226, 232 (2004).  "The trial court is in the best position to determine what remedy will adequately correct the prejudice created by a prosecutor's remarks, and absent an unsustainable exercise of discretion, we will not overturn its decision."  <u>Id</u>.

The defendant first moved for a mistrial at the conclusion of the State's opening statement.  "The standard for reversible error in a prosecutor's opening statement is that the prosecutor must be shown to have acted in bad faith, the opening statement must be completely unsupported by the evidence, <u>and</u> the defendant must be prejudiced thereby."  <u>State v. Gaudet</u>, 166 N.H. 390, 397-98 (2014).  The trial occurred the week before the Martin Luther King, Jr., holiday, and the prosecutor started his opening statement by stating:

Next Monday you do not report for jury duty.  You report on Tuesday instead.  You don't report on Monday because it's a

holiday. It's a holiday in which we honor a man who once had a dream. Almost 50 years ago Martin Luther King stood in front of the Lincoln Memorial and spoke of his dream of the world without racial prejudice, without racial bias, without racial hatred. Dr. King would be sad if he were alive and here today. Because what I'm going to have to talk to you about and what the witnesses are going to be telling you about is racial hatred, bias, and animus at its most ugly form.

The prosecutor returned to this theme at the end of his opening statement by stating:

Fifty years ago Dr. King talked about his dream and he would be sad if he were here today to know that blind hate still exists based on the color of a person's skin. Perhaps we can't change that.

Immediately after the prosecutor's opening statement, the defense moved for a mistrial, stating:

I won't say I'm speechless, but to the extent that [the prosecutor] was doing his best to whip up inflammatory feelings toward my client, I'm going to ask for a mistrial at this point. I don't think this jury's going to be able to make a decision after what the State has presented here.

The trial court denied the request for a mistrial, but agreed that the remarks were improper, noting that, "It is beyond the scope of an opening to talk about the holiday that is coming up." The court gave the following curative instruction:

Now, members of the jury, before you hear the opening statement of the Defense, I just want to instruct you that of course your task, as I've told you before, is to determine based on the evidence in the courtroom and the reasonable inferences you can draw from that evidence whether the State has or has not met its burden of proving the elements of the crime charged. How somebody, even such as Martin Luther King, would or would not feel about a particular case has no bearing on whether or not the State can meet its burden with respect to the elements.

We conclude that the prosecutor's opening statement was improper because it was plainly argumentative. See 6 W. LaFave et al., Criminal Procedure, § 24.7(a), at 453 (3d ed. 2007) (noting that opening statements "are not supposed to be argumentative"). However, there is no evidence that the prosecutor acted in bad faith. Moreover, we conclude that any possible prejudice was negated by the court's curative instruction. The court's

2

instruction directly followed the prosecutor's opening statement, specifically identified the improper comment, instructed the jury not to consider how Martin Luther King would feel about the case, and reminded the jury that the State bore the burden of proving the elements of the crime charged. See Hearns, 151 N.H. at 234 (discussing effectiveness of curative instruction). We presume that the jurors followed the trial court's instructions. See State v. Boetti, 142 N.H. 255, 259 (1997). Accordingly, we conclude that the trial court did not unsustainably exercise its discretion when it denied the defendant's motion for a mistrial based upon the challenged comments in the prosecutor's opening statement. See Hearns, 151 N.H. at 232.

We next address the defendant's motion for mistrial based upon the prosecutor's closing argument. "In examining claims of prosecutorial misconduct during closing argument, we face the delicate task of balancing a prosecutor's broad license to fashion argument with the need to ensure that a defendant's rights are not compromised in the process." State v. Bisbee, 165 N.H. 61, 68 (2013). In his closing argument, the prosecutor stated:

> Ladies and gentlemen, the facts and circumstances of right now is that this is New Hampshire and that this is 2013. This is not 1963 in Alabama.

The prosecutor also stated:

> You know, the fact of the matter is, you heard from multiple eye-witnesses who told you about a terrible thing, not something that we would expect to happen in this day and age, but it did.

The prosecutor added:

> You could talk at great length about just what a terrible thing this was, and the shocking fact that something like this could happen in our State, in this day and age. It's a sad thing. It's a tragic thing. But the fact of the matter is that it happened.

The prosecutor concluded his closing argument as follows:

> I can't ask you to cure hate. I can't do it. It's not within our power. I can't do anything about that. You may want to. But what you can do is something about what he did that day, and you can hold him accountable for what he did. You can't fix all the injustices of the world, you can't make guys like [the defendant] think differently. You just can't do it.
>
> What you can tell him, though, is he was wrong for what he did. And what you can tell him is that he's guilty, and I would ask you

3

to do just that, because that's the right thing to do, and that's the just thing to do. And it's just as just and right today as it was 50 years ago or 100 years ago. Find him guilty, please.

Immediately following the prosecutor's closing argument, the defense requested a mistrial, stating:

> I'm going to ask for a mistrial again. What we've got here is the State arguing, I would say through the back door, with back-handed commentary that well, you can't make up for all the things – bad things that have been done to . . . black people over the centuries, but let['s] do it to this guy.

The trial court did not find the prosecutor's comments improper or declare a mistrial. Instead, it added the following curative instruction to its standard instruction:

> You are not here to right all the wrongs in society, you are here to decide whether the State has proved – whether or not the State has proved the elements of the crime charged beyond a reasonable doubt.

Assuming, without deciding, that the prosecutor's comments were improper, we conclude that the court's curative instruction negated any possible prejudice. See Gaudet, 166 N.H. at 404. First, we note that it was not improper for the prosecutor to comment on evidence that the defendant's conduct was motivated by racial hostility, because that was one of the issues for the jury's determination. See RSA 651:6, I(f). Moreover, the prosecutor's closing argument was responsive to the defense counsel's closing argument suggesting that although the defendant used a racial epithet to refer to the victim, the defendant's conduct was "more about testosterone, than it was about race." See State v. Demond-Surace, 162 N.H. 17, 24 (2011) (prosecutor may use closing argument to respond to defense counsel's closing argument). Accordingly, we reject the defendant's assertion that we should reverse the conviction to deter future prosecutorial misconduct. Nevertheless, to the extent that the prosecutor improperly suggested that the jurors should consider issues beyond the context of the case, the court's curative instruction reminded them that they were "not here to right all the wrongs in society" and that their task was to decide whether the State had proven "the elements of the crime charged beyond a reasonable doubt." Accordingly, we conclude that the trial court did not unsustainably exercise its discretion when it denied the defendant's motion for a mistrial after the prosecutor's closing argument. See Hearns, 151 N.H. at 232.

The defendant next argues that the trial court erred in admitting eyewitness testimony that the defendant's conduct was motivated by racism. Over the defendant's objection, the prosecutor asked an eyewitness: "What stands out the most in your mind about what you saw that afternoon?" The witness answered, "The sheer hate that was involved with the crime. It was extremely racist, it was derogatory." The defendant again objected, and the court again overruled the objection, allowing the witness to continue:

> Again, to me it was extremely racist, derogatory, it's not a place where I want my life to go. And the slashing at the gentleman's face and throat and saying ["]I'm going to kill you n-----,["] it was enough to make my stomach crawl.

The defendant argues the witness's personal opinion as to whether the defendant's conduct was motivated by racism was irrelevant and that his testimony was prejudicial because it "invited the jury to abdicate its role" in determining whether the State had met its burden of proof on that issue. The State counters that the testimony was admissible, and that even if the court erred in admitting it, the error was harmless beyond a reasonable doubt. We need not determine whether the trial court erred in admitting the witness's testimony because, even assuming error, we conclude that the error was harmless beyond a reasonable doubt.

"The State bears the burden of proving that an error is harmless, a burden satisfied by proof, beyond a reasonable doubt, that the erroneously admitted evidence did not affect the verdict." State v. Sprague, 166 N.H. 29, 38 (2014). "In deciding whether the State has met its burden, we consider the strength of the alternative evidence presented at trial." Id. "We also consider the character of the inadmissible evidence, including whether the evidence was cumulative or inconsequential in relation to the strength of the State's evidence." Id.

Here, the State's alternative evidence of the defendant's guilt was overwhelming. Three eyewitnesses to the event testified for the State in addition to the victim, and their testimony was consistent in all material respects. The witnesses testified that the defendant and his companions repeatedly shouted "n-----" or "f---ing n-----" at the victim, that the defendant and one of his male companions emerged from their vehicle to assault the victim, and that the defendant obtained a knife and started swinging it at the victim's head and neck area. The defense did not dispute that the fight occurred or that the racial epithets were shouted. Instead, the defense was that the victim was the instigator and that the defendant acted in self-defense or defense of another.

5

In light of the State's alternative evidence of the defendant's guilt, we conclude, beyond a reasonable doubt, that the challenged testimony did not affect the jury's verdict.  See Sprague, 166 N.H. at 39.  We therefore hold that, even if there was error, the admission of the testimony was harmless.  See id.

Affirmed.

Dalianis, C.J., and Conboy, Lynn, and Bassett, JJ., concurred.


**Eileen Fox,**
**Clerk**