Merrimack
No. 2000-735

THE STATE OF NEW HAMPSHIRE

v.

JAMES HALL

Argued: May 8, 2002
Opinion Issued: September 30, 2002

*Philip T. McLaughlin,* attorney general (*Jonathan V. Gallo,* attorney, on the brief and orally), for the State.

*Richard E. Samdperil,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

NADEAU, J. The defendant, James Hall, appeals his conviction in Superior Court (*Smith,* J.) of second-degree murder. *See* RSA 630:1-b, I (a) (1996). We reverse and remand.

The record supports the following facts. The defendant and his mother lived together in Concord. During an argument on April 15, 1999, the defendant's mother repeatedly insulted him. Eventually, the defendant lunged at his mother, and strangled her until she died. He kept her body in their apartment for approximately three weeks, at first in the bathtub and later in the refrigerator. He then placed the body in a trash barrel, sealed it with tape and left the barrel on the side of the road in another town. Soon after, he left New Hampshire, settling in a religious commune in Maine where he was eventually located and arrested. The defendant was indicted on one count of first-degree murder.

Because the defendant admitted to killing his mother, the sole issue at trial was the intent with which he acted. The defendant's only defense was that his mother's death was not intentional, but was the product of an emotional outburst.

The court instructed the jury about the elements of first-degree murder as well as the elements of the lesser-included offenses of second-degree murder, reckless second-degree murder, and manslaughter. For each offense, the court explained the essential elements the State had to prove beyond a reasonable doubt.

With respect to the level of intent required for second-degree murder, the court instructed the jury that the State had to prove that the defendant acted "knowingly." The court told the jury that "[t]his means that the State must prove that the defendant was aware that his acts would cause the prohibited result. The State does not have to prove that the defendant specifically intended or desired a particular result. What the State must prove is that the defendant was aware or knew that his conduct would cause the result."

At the State's request, and over the defendant's objection, the court also instructed the jury that because the defendant had not raised an insanity defense, it could not consider whether, at the time of the victim's death, "the defendant suffered from a mental condition or mental illness that caused his actions." Nor could it consider whether the defendant had a "mental condition or mental illness" that prevented him from forming the intent to commit any of the offenses at issue in the case, including second-degree murder. Specifically, the court told the jury that it could not

consider whether, at the time of death, the defendant suffered from a "mental illness or mental condition" that:

> (a) made him unable to form the intent to commit murder;
> (b) prevented him from exercising his free will; or
> (c) prevented him from appreciating the criminality of his conduct.

On the first full day of its deliberations, the jury asked, "To what extent may we consider 'state of mind?'" The court told the jury that "'State of Mind' is one of the elements of the crimes I instructed you on," and referred the jury to the pages in the instructions on which the elements of the crimes could be found. Later that day, the jury asked the court, with respect to the elements of second-degree murder, whether it had to find that the defendant was "aware" at the time of the prohibited act in order to find that he possessed the requisite intent. The court said, "yes."

The next day, the jury informed the court that it had "been at a virtual impasse for several hours over the concept of *awareness*. Some of the jury think that the accused must have been aware of the prohibited result of his action during the event. But others in the jury think that the State has failed to prove beyond a reasonable doubt that that is the case. Are we being too strict in our interpretation of the word 'aware?'"

The court responded that the jury was required to follow the instructions as given, and referred it to the page containing the following admonitions: (1) "you may not consider whether, at the time of [the victim]'s death, the defendant suffered from a mental condition or mental illness that caused his actions"; and (2) "you may not consider whether, at the time of [the victim]'s death, the defendant suffered from a mental illness or mental condition that[]. . . made him unable to form the intent to commit murder."

Less than an hour later, the jury asked whether the court would give it a legal definition of the term "mental condition." The court responded that there was no mental condition to consider because the law in this State is that the jury "may not consider whether the defendant suffered from a mental condition."

Soon thereafter, the jury explained that it wanted the definition of mental condition "so that [the jurors] can know whether or not we may consider the defendant's claim of not realizing what he was doing during the act. That is, does *being unaware* of what he was doing constitute a mental condition, and thus be a factor which we *cannot consider*? Conversely, does being unaware of what he was doing constitute a *state of mind*, and thus be something we *must* consider."

The court stated that it could be "of no further assistance" to the jury other than to refer it to the court's previous answers and to the instruction on the insanity defense. The court quoted its admonitions regarding the jury's obligation not to consider "whether the defendant suffered from a mental condition or mental illness" that caused his actions or prevented him from forming the requisite intent.

The jury then asked, "[s]ince we are not allowed to consider mental condition, does this mean that the State does *not* have to prove that the defendant was aware that his acts would cause the prohibited result," to which the court responded, "no." Fifteen minutes after the court responded, the jury asked the court to "please give [the jurors] something more than another reference to the instructions that we have already considered exhaustively." The jury explained that it needed to know the definition of "mental condition" so as to evaluate the evidence regarding the defendant's "possible thoughts, feelings, emotions, levels of awareness and intentions."

The court informed the jury that "New Hampshire law presumes that at the time a crime was committed, the defendant: (a) was aware of his actions; (b) was aware of the criminality of those actions; and (c) was capable of determining right from wrong." The jury then asked "if NH law presumes that at the time a crime was committed, the defendant (a) was aware of his actions; (b) was aware of the criminality of those actions *then* why is the state charged with proving he was aware of his actions and that those actions would result in a prohibited act?" The court responded as follows:

> As a general rule, the law presumes that all persons are aware of their actions. This presumption may be rebutted by a defendant who pleads the defense of insanity. As I have instructed you, that defense is inapplicable to this case. It is the law of this case that the defendant suffered from no mental condition that would have impaired his capacity to form the mental state of "awareness" at the time he acted. It is your job to then determine whether or not the state has proven that the defendant was aware of the result of his actions.

Less than an hour after this final instruction, the jury found the defendant guilty of second-degree murder.

On appeal, the defendant argues that the court's jury instructions violated his constitutional right to due process because they impermissibly shifted the burden of proof to him on the element of intent. We analyze this claim first under the New Hampshire Constitution, referencing decisions of the United States Supreme Court and other jurisdictions only

as analytic aids. *See State v. Cannuli*, 143 N.H. 149, 151 (1998). As both the State and Federal Constitutions require the State to prove each element of the crime charged beyond a reasonable doubt, we hold that, in this context, the State Constitution is at least as protective of the defendant's rights as the Federal Constitution. *See State v. Baker*, 120 N.H. 773, 777 (1980); *In re Winship*, 397 U.S. 358, 364 (1970). Accordingly, we do not engage in a separate federal analysis. *See State v. Ball*, 124 N.H. 226, 232 (1983).

An instruction that creates a mandatory presumption of criminal intent violates the due process requirement that the State prove every element of a criminal charge beyond a reasonable doubt. *See Sandstrom v. Montana*, 442 U.S. 510, 520-24 (1979); *State v. O'Leary*, 128 N.H. 661, 668 (1986). The question before this court is whether the challenged jury instruction created such a conclusive presumption.

We begin by looking at the challenged portions of the instructions. If the challenged portions, considered in isolation, could reasonably have been understood to create a mandatory presumption on the element of intent, we then consider them in the context of the charge as a whole. *Francis v. Franklin*, 471 U.S. 307, 315 (1985); *see State v. Parker*, 142 N.H. 319, 324 (1997). "[W]hether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom*, 442 U.S. at 514; *see State v. Jones*, 125 N.H. 490, 494 (1984); *State v. Dingman*, 144 N.H. 113, 115 (1999).

The defendant was convicted of second-degree murder, which requires proof that he knowingly caused the death of another. *See* RSA 630:1-b (1996). Because the defendant admitted to killing his mother, the only question before the jury was whether he did so "knowingly." "A person acts knowingly with respect to conduct ... when he is aware that his conduct is of such nature." RSA 626:2, II(b) (1996). "In other words, a defendant acts knowingly when he is aware that it is practically certain that his conduct will cause a prohibited result." *State v. Bergen*, 141 N.H. 61, 63 (1996) (quotation omitted). Awareness is thus central to the concept of acting "knowingly."

■ In its general charge to the jury and in its response to the jury's eight questions, the court instructed the jury that: (1) second-degree murder requires proof that "the defendant was aware that his acts would cause the prohibited result"; (2) New Hampshire law presumes "that all persons are aware of their actions"; (3) "[t]his presumption may be rebutted by a defendant who pleads the defense of insanity"; (4) the insanity defense "is inapplicable to this case"; and (5) "the defendant

suffered from no mental condition that would have impaired his capacity to form the mental state of 'awareness' at the time he acted."

A reasonable juror could have interpreted these instructions to mean that the defendant was presumptively aware that he was causing his mother's death, thus relieving the State of its burden of proving this beyond a reasonable doubt. Although the court informed the jury that the presumption was rebuttable, it also informed the jury that the defendant could not rebut the presumption because he had failed to raise an insanity defense. Thus, a reasonable juror could have interpreted these instructions as creating a mandatory presumption that the defendant was aware that he was causing his mother's death.

The court's instructions are similar to those the Supreme Court held unconstitutional in *Sandstrom*. In *Sandstrom*, the court ruled that an instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" created an impermissible conclusive presumption on the issue of intent. *Sandstrom*, 442 U.S. at 515 (quotation omitted). As in *Sandstrom*, the jurors in this case "were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory." *Id.* "Standing alone, the challenged language undeniably created an unconstitutional burden-shifting presumption with respect to the element of intent." *Franklin*, 471 U.S. at 318.

Our conclusion is not altered when we view the challenged language in the context of the court's entire charge. The State argues that the court's final instruction clarified that while the jury was to presume that the defendant was aware of his actions (*i.e.*, that he was sane), it was to determine, on the basis of evidence, whether the State proved that the defendant was aware of the result of his actions. We disagree.

■ Contrary to the State's assertions, the law does not presume that individuals are aware of their actions. Although the law presumes "sanity," *see Novosel v. Helgemoe*, 118 N.H. 115, 127 (1978), we have not defined it to mean, as a matter of law, that a defendant is aware of his or her actions. We have held repeatedly that sanity is a question of fact to be determined by the jury and that there is no test for determining whether a defendant is insane. *See State v. Cegelis*, 138 N.H. 249, 255-56 (1994).

Moreover, although the final instruction told the jury that it was to determine, on the basis of evidence, whether the State proved that the defendant was aware of the result of his actions, it also told the jury that it was "the law of this case" that the defendant "suffered from no mental condition that would have impaired his capacity to form the mental state of

'awareness' at the time he acted." A reasonable juror could have interpreted this instruction to mean that it was "the law of this case" that the defendant was aware of the results of his actions.

■ Because a reasonable juror could have understood the jury instructions to create a mandatory presumption that shifted the burden to the defendant on the element of intent, and because the charge read as a whole did not explain or cure this deficiency, we hold that the charge violated the defendant's right to due process. *See Franklin*, 471 U.S. at 325.

The State urges us to apply a harmless error analysis. An error of this magnitude requires reversal of the defendant's conviction and is not amenable to harmless error analysis. *See Sullivan v. Louisiana*, 508 U.S. 275, 278-82 (1993). The jury in this case was instructed to presume the *only* element of the offense of second-degree murder that was at issue – whether the defendant was aware of the results of his conduct. The defendant's only defense to this charge was that he was not aware at the time of the murder that his actions were causing his mother's death. A presumption that the defendant was "aware," as a matter of law, of the consequences of his actions, eliminated his only defense. *See Franklin*, 471 U.S. at 325-26. Absent this presumption, we can only speculate what a reasonable jury would have done. *See Sullivan*, 508 U.S. at 281.

Even were we to apply a harmless error analysis, we would find that the error was not harmless. The evidence that the defendant was aware of the results of his conduct was not so overwhelming as to render the court's jury instructions harmless error. *See Franklin*, 471 U.S. at 325-26; *Yates v. Evatt*, 500 U.S. 391, 407-11 (1991). Indeed, the defendant repeatedly testified that he was *not* aware that he was causing his mother's death at the time of the murder.

The State argues that the trial court's instructions on the insanity defense were "not only legally correct but also necessary under the circumstances" because "of the defendant's unrelenting presentation of a defense unavailable to [him] either by the facts of the case or the law." We disagree.

■ The insanity defense applies to evidence "of a mental *disease* or *defect* that deprives the defendant of the ability to form a specific intent." *State v. James*, 140 N.H. 50, 52 (1995) (emphasis added); *see State v. Sylvia*, 136 N.H. 428, 433 (1992). In this case, the defendant did not claim to have suffered from either a mental disease or defect. Rather, he asserted that, at the time of the offense, he was so upset that he did not act "knowingly." Under these circumstances, there was no need for the court to have instructed the jury on the insanity defense. A defendant may offer

evidence as to whether he possessed the requisite *mens rea* for the crimes charged without claiming to be insane. *See State v. St. Laurent*, 138 N.H. 492, 494 (1994). Where, as here, the crime charged requires proof that the defendant acted "knowingly," the defendant need not assert an insanity defense before offering evidence that he was not "practically certain" that his conduct would cause a prohibited result. *Bergen*, 141 N.H. at 63 (quotation omitted). Just as insanity and *mens rea* can co-exist, so too can sanity and the lack of *mens rea* co-exist. *See Novosel*, 118 N.H. at 123.

*Reversed and remanded.*

BROCK, C.J., and DALIANIS, J., concurred.