Grafton
No. 2002-481

WILLIAM BERLINER

v.

CRAIG CLUKAY d/b/a TREELINE TIMBER

Argued: May 7, 2003
Opinion Issued: September 30, 2003

*Aten Clayton & Eaton PLLC*, of Littleton (*Gregory S. Clayton* on the brief and orally), for the plaintiff.

*Getman, Stacey, Tamposi, Schulthess & Steere, P.A.*, of Bedford (*Edwinna C. Vanderzanden* and *Jill A. DeMello* on the brief, and *Ms. Vanderzanden* orally), for the defendant.

*Cook & Molan, P.A.*, of Concord (*Ronald E. Cook* on the brief), for National Association of Independent Insurers, as *amicus curiae*.

BRODERICK, J. The defendant, Craig Clukay d/b/a Treeline Timber, appeals from a jury verdict in Superior Court (*Burling*, J.) awarding the plaintiff, William Berliner, $648,500.00 in damages for the unlawful harvesting of over 5,000 trees from the plaintiff's property. We affirm.

## I

The following facts are undisputed. The plaintiff owns three large parcels of undeveloped forest land in Landaff, which he previously used for recreational purposes, including hiking and camping. An abutting landowner hired the defendant to harvest her property. While performing this task, the defendant crossed onto the plaintiff's property, cutting thousands of his trees from approximately seventy acres. After discovering his intrusion, the defendant contended that his trespass was inadvertent and disputed the claimed damages.

The plaintiff filed suit seeking statutory damages under the timber trespass statute, RSA 227-J:8 (2000), compensatory damages for restoration of the land (*i.e.*, replanting the trees), damages for the repair of Cobble Hill Road, the access road to the plaintiff's property, and various skidder trails and damages for the loss of use and enjoyment of his property. By special verdict, the jury awarded the plaintiff $263,500 in statutory damages, $20,000 for the repair of Cobble Hill Road, $5,000 for the repair of a skid road, and $360,000 for loss of use. This appeal followed.

## II

The defendant first challenges the award of statutory damages under the timber trespass statute, which provides:

> I. No person shall negligently cut, fell, destroy, injure, or carry away any tree, timber, log, wood, pole, underwood, or bark which is on the land of another person, or aid in such actions without the permission of that person or the person's agent.

> II. In addition to any other civil or criminal penalty allowed by law, any person who violates the provisions in paragraph I shall forfeit to the person injured no less than 3 and not more than 10 times the market value of every such tree, timber, log, lumber, wood, pole, underwood, or bark cut, felled, destroyed, injured, or carried away.

RSA 227-J:8. No guidance is provided on the face of the statute concerning the factors to be considered in selecting the appropriate statutory multiplier. The trial court instructed the jury that: "In making your determination concerning the correct statutory multiplier ... you *may* consider whether the Defendant's actions were willful, knowing or negligent, as well as any mitigating circumstance." (Emphasis added.)

The defendant challenges the permissive nature of the court's charge, arguing that it should have instructed the jury that the statutory multiplier *should or must* reflect the degree of wrongfulness of the defendant's conduct. He contends that two of his proposed jury instructions, which the trial court refused to give, would have provided the requisite guidance. He also argues that the 8.5 multiplier selected by the jury was not supported by any evidence of willful misconduct. We conclude, however, that the defendant's arguments were not preserved for appellate review.

It has been long recognized in this jurisdiction that "[a] specific, contemporaneous objection is required to preserve an issue for appellate review." *State v. Sullivan*, 142 N.H. 399, 403 (1997). This requirement is

grounded in both judicial economy and common sense, affording the trial court the "opportunity to correct an error it may have made, or clearly explain why it did not make an error." *Id.* (quotation omitted). Providing the trial court with the opportunity to correct error "is particularly appropriate where an alleged error involves a jury instruction." *State v. Sinbandith,* 143 N.H. 579, 581 (1999) (quotation omitted).

The statutory multiplier issue was explored during a chambers conference at the conclusion of the evidence, the day before final argument. Counsel and the court reviewed the proposed jury instructions and discussed factors that might be relevant to the jury's selection of an appropriate multiplier. The defendant contends that his proposed instructions four and nineteen would have provided the requisite guidance to the jury.

Proposed instruction four reads:

> In determining the multiplier of the trees' market value in order to set a forfeiture penalty under R.S.A. 227-J:8, II, evidence of the defendant's knowing willfulness in causing the cutting has been held by the Supreme Court to warrant application of a multiple of five time[s] actual compensatory damages.

Similarly, proposed instruction nineteen requested that the jury be advised that:

> In a case where the defendant had willfully caused the cutting of the trees after having been informed that they did not have permission to clear the land further, and by evidence that the cutting of the trees exceeded the reasonable use allowed in maintaining neighbors' prescriptive easement to use roadway to access their lot the New Hampshire Supreme Court has ruled that an award of 5 times the value of 12 trees or compensatory damages award of $1,200 for 12 felled trees was supported by property owner's uncontroverted estimated value of $100 per tree.

Both proposed instructions referenced a specific timber trespass case, *McNamara v. Moses,* 146 N.H. 729 (2001), and essentially sought to have the trial court suggest to the jury a statutory multiplier of five in the event it concluded that the defendant's actions were willful. The trial court, however, demurred:

> My reading of [*McNamara*] is that the Court held that there was sufficient evidence to support such a finding by the trial court, but that it was not a holding of the Court, that multiple of 5 times.

Defense counsel's response indicated her apparent agreement:

> Oh, I see what you mean. Okay. But I do think the jury has a right to know that, even in cases of egregious conduct, the multiplier has been in the low end of the range.

The court seemed unpersuaded by this modified request, stating that the facts of the prior case were distinguishable and that "to tell the jury that that case is somehow controlling and those facts are controlling on these facts ... is a misstatement and not within our province of giving them instructions." The court noted, however, that it

> would be happy if we [could] agree on what standard the jury applies by using *McNamara v. Moses*, because I think this is the most recent case applying this statute, I would be thrilled, because I think we need to be able to give the jury some instruction about what to consider in applying it, but it's going to be based on the facts of this case and their common sense, using some kind of standard, and let's see if we can find out what that standard is. Okay. [Turning to proposed instruction n]umber 5.

No agreement on a standard appears in the record. The chambers conference later concluded with an expressed intent to reconvene the next day to allow counsel to place their objections on the record.

The following day the trial court specifically invited counsel, before it instructed the jury, to comment on its draft instructions which they had had an evening to review. Defense counsel raised no objection to the court's draft instructions, which included the very statutory multiplier instruction the defendant now claims was erroneous. Likewise, following the court's charge, defense counsel made no objection either to the court's instructions or its failure to use the specific instructions she had submitted. Therefore, defense counsel failed to alert the trial court to any disagreement she had with its charge.

■ ■ We acknowledge that defense counsel discussed the statutory multiplier with the trial court in chambers the day prior to the jury charge and articulated general concerns about an appropriate standard to guide the jury's selection of the multiplier. She, however, never formalized an objection. A chambers discussion directed at persuading the court to craft or utilize a proposed instruction, without more, or to adopt a specific view of the applicable law does not constitute a "specific, contemporaneous objection." Exchange of views on the law, however cogent or well-intentioned, cannot substitute for a formal objection, unless an objection is plainly expressed. None is evident on the record before us. The argument

that the trial court misinstructed the jury on the method of selecting a statutory multiplier is, therefore, not preserved. Likewise, because the defendant never preserved a statutory multiplier objection, he cannot now pursue a claim that the evidence was insufficient to support the jury's selection of an 8.5 statutory multiplier. The trial court's charge on the multiplier to which the defendant never objected allowed the jury to conclude as it did.

The defendant also challenges the award for statutory damages by arguing that it was tainted by the trial court's erroneous preclusion of mitigation testimony. He contends that his feelings of remorse and regret upon learning that he had harvested timber on the plaintiff's property were relevant to demonstrate that his trespass was inadvertent. The trial court ruled that the defendant's "feelings post cutting" were irrelevant to whether "his conduct [was] willful, intentional or otherwise during the trespass."

■ Assuming, without deciding, that the defendant's feelings of remorse and regret had some relevance to his state of mind at the time he harvested the plaintiff's timber, we reject the defendant's argument. The defendant testified to his after-the-fact feelings prior to the plaintiff's objection and this testimony was not stricken from the record. Specifically, the defendant relayed that he was "pretty distraught" and "so upset" when he learned he had mistakenly cut the plaintiff's timber. The defendant identifies no testimony which he sought to admit that differed in kind or quality from that which he in fact introduced. Therefore, any additional testimony about his feelings, even if relevant, would have been cumulative evidence, at best. *See Kallgren v. Chadwick*, 134 N.H. 110, 115 (1991) (cumulative evidence may be precluded). Accordingly, the defendant suffered no prejudice from the trial court's ruling. *See Welch v. Gonic Realty Trust Co.*, 128 N.H. 532, 536 (1986).

## III

The defendant next challenges the jury's loss of use award. He contends that the trial court erred by permitting the plaintiff's dismay at the harvested condition of his land to serve as the sole basis for damages for loss of use. He asserts that because the plaintiff failed to present any objective evidence about the economic value of the loss of his recreational use, the claim should never have gone to the jury. This argument, however, was not preserved.

The record reflects that the defendant first raised the viability of the plaintiff's loss of use claim during the parties' chambers conference

concerning proposed jury instructions. The following excerpts memorialize the discussion:

[COURT]: The jury may consider a loss of use in its award if it concludes that it has made these other findings first, that the statutory compensation does not fully compensate the plaintiff, that there is a personal — how did we do this? That there has to be another benefit besides the marketability of the lumber to the owner, that if there are unique and special circumstances, then it is at the election of the plaintiff to request restoration damages, and that there be also available a claim for loss of use. You'll see it in the instructions, but the jury has to weigh any restoration costs in making its award against the practicality and the feasibility and the disp[ro]portionality of the award to the value of the land.

[PLAINTIFF]: My sense was that the loss of use claim is not a part of replacement costs, as such; it's a different. It's in Section 929 Restatement, but it's a different element of recovery, and, therefore, it's not subject to the personal disproportionate and those other tests which do apply to replacement costs, and that's just a straight compensatory damage claim for negligence.

[DEFENSE]: Is there an objectivity in here?

[COURT]: I found no case law. You point me to case law that says that it has to be an objectivity standard.

[DEFENSE]: Okay, I mean, the tradition has always been that the value of a chattel — these are roughly chattels. I mean, a painting is worth whatever somebody will pay for it. A Rembrandt is something that's definable in the market. I've always viewed the case law on chattels, your car, if it gets wrecked, is not worth more because you loved it. It's still worth whatever

the replacement costs of the 1999 BMW is or whatever you're driving, and there's a very definable market value to that chattel, and it's only when you get into the kind of thing that the reasonable person would look at and say, yeah, that's a Rembrandt, you know, that's —

[COURT]: Well, the fact that the damage is not easily ascertainable is not necessarily reason to take that issue away from the jury. The jury can still make a determination of what a reasonable amount is, even though that amount is difficult to ascertain.

[DEFENSE]: I think you're just getting cumulative and duplicative damages. I mean, it's the same thing. You have to buy the trees for what a willing buyer and willing seller will pay, then you have to pay a multiple, then you have to pay some sort of loss of use of those trees. To me, that's what the multiple's all about, is the lost growing time, and then you have to pay for the unhappiness. I mean, the law doesn't compensate, as we see in the physical contact tort cases, the law doesn't compensate mere grief, unhappiness or upset. It has to be something that rises to the level of requiring, you know, presenting physical symptoms.

[COURT]: All of this you can argue to the jury, and, I mean, the jury's going to be left to make these determinations, because these are factual issues.

[DEFENSE]: Right, but there is clear law on what kinds of emotional injuries are compensable in New Hampshire.

[COURT]: This is not an emotional injury case. I didn't hear anything about emotional injury. We're talking about the value that this plaintiff attributes to the property.

[DEFENSE]: Which is in no way measurable in economic terms. It's all personal to him.

[COURT]: And that's what the case says, that the election for restoration damages is for personal reasons attributed to the plaintiff.

[DEFENSE]: Okay. I'll spend some time on it tonight.

Later in the same conference, further exchange ensued:

[DEFENSE]: I mean, there isn't even any evidence upon which a reasonable jury could find any dollar value to loss of use. He never testified that because I couldn't go there, I stayed in a motel for $150 bucks a night, or because I couldn't go there I went to Europe for $10,000.

[COURT]: Okay. Let's talk about loss of use after we go through these jury instructions, because I think I'm inclined to agree with you, because he wasn't able to put any value at all on it, but let's go back to that.

The conference concluded with the following colloquy:

[DEFENSE]: Yes. I guess I need to understand what the Court's sense is. I mean, we have this compensatory damage claim, which I've looked at as the road, the skid road repairs, you know. If there's a loss of use, I don't know about what, and then we have these statutory damages, which are stumpage times a multiplier based on whatever standard we can agree is applicable to get between 3 and 10.

[COURT]: Look at my instruction on statutory violation and then just ignore the first two sentences or the first sentence about his admitting that he negligently cut.

[DEFENSE]: That's page 16, I guess. Mr. Clukay has admitted —

[COURT]: Well, actually before we do that, because I want to let [the stenographer] go, let's finish up here. We'll come back to this, to number 16.

[DEFENSE]: Maybe, your Honor, would it help if we just decide to let [the stenographer] go, and we can slug it out mano-e-mano (ph), just as a scholarly discussion and reassemble in the morning, just to put our objections on the record? Because I don't think either one of us are prepared to address your Honor's instructions.

[COURT]: That's fine, that's fine.

As earlier noted, the court concluded the conference to give counsel further opportunity to review its draft jury instructions with the understanding that they would reconvene the following morning for record objections.

The next day, defense counsel made no objection to the loss of use instruction. The court subsequently charged the jury, instructing in part that "the measure of [compensatory] damages in such circumstances takes into account the difference between the value of the land before the harm and the value after the harm and *the loss of use of land suffered by the plaintiff.*" (Emphasis added.) In addition, the special verdict form given to the jury at the close of the court's charge, to which the defendant never objected, asked, "Do you find that Will Berliner is entitled to compensation for loss of use?" The defendant, however, presented no objection at the close of the jury charge.

The time to object has long since passed. Certainly, the defendant questioned the viability of loss of use damages during the chambers conference, and the court itself expressed doubt on whether the claim was supported by sufficient evidence. No definitive conclusion was ever reached, however, and no specific objection was ever made. Indeed, at one point defense counsel expressed an intent to review the matter during the overnight break. The issue was never revisited. Moreover, the transcript of the chambers conference ends with counsel agreeing to release the stenographer, continue discussions off the record and reconvene the next day to put objections on the record. None were later recorded. Accordingly, we conclude that the defendant never preserved his challenge to the loss of use claim.

The defendant also contends that the plaintiff's failure to mitigate his damages by making reasonable use of his property for sporadic hiking and camping after the trees were cut bars his claim. To the extent the

defendant made this argument below, he advanced it for the first time in a post-trial motion to set aside the verdict. He never sought dismissal of the claim prior to its submission to the jury, nor did he ever request a mitigation instruction for the jury. He cannot now complain. *See Maloof v. Bonser*, 145 N.H. 650, 654 (2000).

The defendant next challenges the loss of use award on the basis that the jury verdict was internally inconsistent. He contends that the trial court should have set aside the award because it was at odds with the jury's decision not to award damages for diminution in value of the plaintiff's land or the cost to replace the harvested trees. The special verdict form, however, expressly advised the jury that it could award compensatory damages for loss of use *in addition to* any award provided for either diminution in land value or replanting costs. The defendant never alerted the trial court to the possibility that the verdict form, as followed, could result in an alleged inconsistent verdict. Accordingly, it is too late to raise this argument now.

## IV

Finally, the defendant challenges the damages awarded to repair Cobble Hill Road contending that no legal basis supports the award. At trial, the defendant argued that awarding the plaintiff costs to repair the town road would constitute a windfall because the road, even if fixed, could return to its current condition since it is used as a skidder road and the plaintiff has no right to limit its use. Construing his arguments on appeal as mirroring his argument preserved below, we reject it.

Testimony at trial revealed that the base of Cobble Hill Road was previously used for logging, that the remainder of the road appeared to be virtually unused, and that the entire road leading to the plaintiff's property was passable by vehicle without use of four-wheel drive. After the defendant's trespass, however, the road was rendered virtually impassable by car. Further, because it is a class VI road, the town has no obligation to maintain it. *See Stevens v. Town of Goshen*, 141 N.H. 219, 223 (1996); RSA 229:5, VI, VII (Supp. 2002); RSA 231:93 (1993). Thus, the evidence supports the conclusion that the plaintiff was left with the financial burden of restoring Cobble Hill Road to its pre-trespass condition. Moreover, the damages awarded are sufficiently supported by the evidence. *Phillips v. Verax Corp.*, 138 N.H. 240, 247 (1994) (mathematical certainty not required in computation of damages).

We have considered the defendant's remaining arguments and find them to be without merit and warranting no further discussion. *Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.