NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Carroll
No. 2017-0345


THE STATE OF NEW HAMPSHIRE

v.

BRITTANY BOGGS

Argued:  May 15, 2018
Opinion Issued:  July 6, 2018


Gordon J. MacDonald, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.


Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.


DONOVAN, J.  The defendant, Brittany Boggs, appeals two felony convictions of issuing bad checks following a jury trial before the Superior Court (Ignatius, J.).  See RSA 638:4, I (2016).  She first contends that the evidence presented at trial was insufficient to convict her of either felony.  The defendant also argues that, as to one of the charges, the trial court violated her due process rights, as guaranteed by the State and Federal Constitutions, by instructing the jury on the presumption of knowledge set forth in RSA 638:4, II (2016).  See N.H. CONST. pt. I, art. 15; U.S. CONST. amend. XIV.  We affirm in part, reverse in part, and remand.

The jury could have found the following facts. On December 13, 2014, the defendant was married and celebrated her nuptials with a reception at the Hobbs Tavern and Brewing Company (the Tavern). The Tavern provided the food, beverages, space, and associated labor for the party, and the defendant issued to the Tavern the two checks at issue as payment for the reception. On December 11, the defendant issued one check, in the amount of $8,517.27, to the Tavern as payment for the predetermined costs of the reception. This check was drawn against a TD Bank checking account held by an entity named the Wolfeborough Diner LLC, a New Hampshire limited liability company that the defendant managed. The Tavern deposited the TD Bank check into its account on December 12, but the check was returned by TD Bank on December 16 because the Wolfeborough Diner account had been closed as of November 19.

The defendant issued a second check to the Tavern on the night of her wedding in the amount of $1,315.73 as payment for the costs associated with the bar tab. This check was drawn against the defendant's personal checking account with Citizens Bank. On December 22, the second check was returned by Citizens Bank because the account lacked sufficient funds to pay it. The Tavern reported the returned checks to the defendant in due course, but when the debt remained unsatisfied as of December 31, the Tavern contacted the police.

In response to this complaint, a detective working for the sheriff's department contacted the defendant about the dishonored checks, and the defendant informed him that she "had taken care of it already." The detective, however, understood that the debt remained unsatisfied and issued a "14 day letter" to the defendant. See RSA 638:4, III (2016) (codifying an affirmative defense upon payment of the amount of a dishonored check, together with all costs and fees, within 14 days of defendant's receipt of notice that the check was dishonored). Thereafter, the defendant repeatedly promised the detective that she would satisfy the debt. By January 29, 2015, however, the debt remained unpaid, which prompted the detective to apply for a warrant for the defendant's arrest. He also obtained the defendant's bank records from TD Bank and Citizens Bank pursuant to a search warrant. On March 20, 2015, a Carroll County Grand Jury indicted the defendant on two felony counts of issuing bad checks, in violation of RSA 638:4 (2016).

At trial, the defense did not contest that the defendant had issued both checks, that TD Bank and Citizens Bank returned both checks, and that the debt had not otherwise been satisfied. Instead, the defense centered on whether the State could prove, beyond a reasonable doubt, the applicable mens rea — that the defendant acted knowingly and that she knew or believed that the checks would not be honored by either of the banks when she issued them to the Tavern. See RSA 638:4, IV(b). In an effort to prove the defendant's intent, the State highlighted the defendant's representation to the investigating

2

detective that the Tavern debt had been "taken care of," the fact that the debt had not been satisfied, and the historical status of the two bank accounts at issue as documented by the bank records.

Following closing arguments, the trial court held a bench conference for the purpose of discussing final jury instructions. During that conference, the State proposed, for the first time, an instruction regarding the presumption set forth in RSA 638:4, II. Initially, defense counsel objected to the instruction because it "shifts the burden to the [d]efense." He also argued that the presumption did not apply to the case because the defendant "would need to know that she [did not] have an account." Defense counsel also argued that, if the instruction were to be given, the trial court should include language informing the jury that the presumption applied only "if [the defendant] knew the account had been closed." The defense renewed its objection to the instruction just prior to the trial court's jury charge by articulating that it "shifts the burden of proof . . . contrary to Part I, Article [15] of the New Hampshire Constitution and . . . the United States Constitution." The trial court overruled the defendant's objections and instructed the jury that "for purposes of [the TD Bank] charge, a person who issues a check for which payment is refused by the drawee is presumed to know that such check would not be paid if the person had no account with the drawee at the time of issue." Following the instruction and jury deliberations, which lasted just 45 minutes, the jury returned guilty verdicts on both indictments.

The defendant raises two issues on appeal. First, she argues that, with respect to the TD Bank conviction, the trial court erred when it instructed the jury on the mandatory presumption set forth in RSA 638:4, II in violation of her due process rights under the State and Federal Constitutions. See N.H. CONST. pt. I, art. 15; U.S. CONST. amend. XIV. Second, she asserts that both convictions must be overturned because the evidence presented at trial was insufficient to prove her intent beyond a reasonable doubt. The State counters that, as a threshold matter, the defendant failed to preserve and insufficiently develops her constitutional claims on appeal. The State also maintains that the evidence introduced at trial was more than sufficient to establish the defendant's guilt beyond a reasonable doubt. We address the State's preservation arguments first.

I. Preservation and Waiver

The State's preservation arguments suggest that the defendant's burden-shifting claim, as asserted in the trial court, is distinct and separate from her mandatory presumption argument on appeal. According to the State, the defendant's objection to the jury instruction could not and did not adequately preserve her mandatory presumption argument on appeal, and, further, the defendant's appellate arguments regarding a mandatory presumption insufficiently develop any constitutional arguments that the jury instruction

3

improperly shifted the burden of proof to the defendant.  The State also maintains that the defendant somehow waived or failed to preserve her objection to the jury instruction by proposing an alternative instruction to which the State objected and the trial court rejected.  We disagree with each of these assertions.

We reject the State's premise that a burden-shifting objection and an argument against instructing a jury on a mandatory presumption represent two distinct and unrelated claims such that neither assertion preserves the other.  Both assertions articulate a due process claim that a jury charge that includes a mandatory presumption relieves the State of its burden of proof on the presumed element.  See Francis v. Franklin, 471 U.S. 307, 313-14 (1985).  Whether an objection is premised on the burden-shifting effect or the mandatory character of the presumption, they each adequately and sufficiently preserve a due process claim under the State and Federal Constitutions, assuming the objection was timely and properly asserted.

We next address whether the defendant's objections in this case were so properly and timely raised.  To preserve a state constitutional claim for appellate review, a defendant must: (1) raise it in the trial court; and (2) on appeal, specifically invoke a provision of the State Constitution in his or her brief.  See State v. Dellorfano, 128 N.H. 628, 632 (1986).  Relying on Berliner v. Clukay, 150 N.H. 80, 83-85 (2003), the State argues that the defendant failed to preserve her jury instruction claim because she proposed an instruction that included the language "is presumed."  This argument, however, is based upon a faulty premise.  Although the defendant requested a modification to the State's proposed instruction based upon the language of RSA 638:4, II, the trial court rejected her request and adopted the State's instruction in total.  In response, the defendant asserted a formal objection to the instruction, arguing that the State's instruction "shifts the burden of proof and that's contrary to Part I, Article [15] [of] the New Hampshire Constitution and . . . the United States Constitution."

By doing so, the defendant fulfilled the two essential prerequisites to appellate review of a state constitutional claim.  First, defense counsel alerted the trial court to the defendant's contention that the disputed instruction improperly shifted to her the burden of proof as to an element of the offense.  Further, defense counsel formally stated his objection on the record and referenced Part I, Article 15 of the New Hampshire Constitution and the Federal Constitution.  Defense counsel thus afforded the trial court an opportunity to consider the issue now raised on appeal and provided it with an opportunity to correct the error.  See State v. Mouser, 168 N.H. 19, 27 (2015); State v. Town, 163 N.H. 790, 792 (2012); cf. Berliner, 150 N.H. at 84-85 (holding defendant did not preserve jury instruction issue because counsel never made a formal objection).  Second, the defendant has specifically invoked Part I, Article 15 of the New Hampshire Constitution on appeal, thereby satisfying the second

prerequisite for appellate review.  See Dellorfano, 128 N.H. at 632-33.  Accordingly, we find that the defendant properly preserved her jury instruction claims for our review.

We find equally unavailing the State's claims that the defendant somehow waived or insufficiently briefed this issue on appeal.  The State argues that the defendant "waived" her right to appeal the trial court's jury instruction because: (1) she should have proposed an additional instruction relying on RSA 626:7, II(b) (2016) that would have cured any alleged infirmity; and (2) she proposed an alternative instruction to the trial court that included the words "is presumed."  Although the State's factual assertions may be accurate, the State has not cited nor are we aware of any authority supporting the proposition that to avoid a waiver of a jury instruction challenge a defendant must not only object to the instruction but also propose an alternative one.  Furthermore, although the alternative instruction the defendant did propose included the words "is presumed," it also said that the presumption applied only if the defendant knew that the account was closed when she issued the check — language which would, in essence, have accomplished the task of informing the jury that the presumption itself did not require the jury to find that the defendant had such knowledge.

RSA 626:7, II(b) highlights the issue of the trial court's inclusion of a mandatory presumption on an element of the offense in its jury charge.  That statute provides, in pertinent part, that:

> II.     When this code establishes a presumption with respect to any fact which is an element of an offense, it has the following consequences:
>
> . . . .
>
> (b)     When the issue of the existence of the presumed fact is submitted to the jury, the court shall charge that while the presumed fact must, on all the evidence, be proved beyond a reasonable doubt, the law declares that the jury may regard the facts giving rise to the presumption as sufficient evidence of the presumed fact.

RSA 626:7, II(b) (emphases added).  The effect of this statute is to insure that, in the criminal law context, when the law creates a presumption, it is to be treated as permissive rather than mandatory.  Thus, when the State requested the trial court to instruct the jury on the presumption, it should also have included in its request language that explained to the jury that the presumption was permissive, not mandatory.  Accordingly, we do not view the

5

defendant's failure to alert the trial court to alternative, statutory language or her advocacy for an alternative presumption as a waiver.

Similarly, we reject the State's contention that the defendant has failed to sufficiently develop on appeal the constitutional elements of her burden-shifting argument. The constitutional questions initially raised at trial have been fully developed by the defendant before this court. We, therefore, find that the defendant did not waive her right to appeal the trial court's jury instruction and further find that her constitutional arguments are sufficiently developed for our review.[1]

II.  RSA 638:4, II Instruction

We now turn to the merits of the defendant's contention that the trial court's inclusion of RSA 638:4, II's language in its jury instruction on the TD Bank check charge created an impermissible, mandatory presumption that shifted the burden of proof to her on the element of intent in violation of her due process rights, as guaranteed by Part I, Article 15 of the New Hampshire Constitution and the Fourteenth Amendment to the United States Constitution. See N.H. CONST. pt. I, art. 15; U.S. CONST. amend. XIV. The State maintains that it was entitled to the instruction, because the trial court found that it had presented sufficient evidence to establish the facts supporting the presumption, as required by RSA 626:7, II(a) (2016). The State further claims that the trial court's charge, when viewed in its entirety, properly placed the burden of proving all of the elements of the offense on the State, and did not shift the burden of proof or violate the defendant's due process rights. We address this issue first under the State Constitution, relying on federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

The necessity and the particular scope and wording of a jury instruction generally fall within the sound discretion of the trial court. See State v. Noucas, 165 N.H. 146, 154 (2013). However, when a particular jury instruction raises a question of law relating to the State's burden of proof, we review such matters de novo. See State v. Etienne, 163 N.H. 57, 71 (2011) (applying de novo review when resolving a defendant's claim that jury instruction reduced State's burden of proof); see also United States v. Lopez, 500 F.3d 840, 847 (9th Cir. 2007) (reviewing de novo a claim that a jury instruction violated due process by creating an unconstitutional presumption or inference).

---

[1] We note that issues concerning jury instructions can be exacerbated by time constraints that frequently occur in jury trials. In this case, for example, the trial court was required to address an issue of first impression in this jurisdiction after closing arguments while the jury was awaiting final instructions and its deliberations. With the benefit of hindsight, the parties and the trial court would have profited from a prior disclosure and, if necessary, a briefing on this particular issue in advance of closing arguments.

6

The State maintains that it was entitled to the instruction regarding the presumption under RSA 626:7, II(a) because the trial court correctly found that the State had presented sufficient evidence supporting the presumption. The State's argument misses the mark. Although the State may have been entitled to an instruction regarding the presumption, it was not entitled to an instruction establishing a mandatory presumption on an element of the offense. See State v. Hall, 148 N.H. 394, 398 (2002); RSA 626:7, II(b) (providing that, when a presumed fact is submitted to the jury, trial court "shall charge" that presumed fact "must, on all the evidence, be proved beyond a reasonable doubt" and that the jury "may regard the facts giving rise to the presumption as sufficient evidence" (emphases added)). The issue before us is not whether the State's evidence was sufficient to submit to the jury the existence of a presumed fact; rather, the issue we must decide is whether the particular instruction issued in this case constituted a mandatory presumption that violated due process.

We have ruled that "[a]n instruction that creates a mandatory presumption of criminal intent violates the due process requirement that the State prove every element of a criminal charge beyond a reasonable doubt." Hall, 148 N.H. at 398. Pursuant to Hall, our analysis requires that we first determine whether the challenged jury instruction, when read in isolation, created a mandatory presumption. Id. If that language could reasonably have been understood as creating such a presumption on the element of intent, we then consider it in the context of the charge as a whole. Id.; see Sandstrom v. Montana, 442 U.S. 510, 514 (1979) ("[W]hether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction.").

The trial court's jury instruction with respect to the TD Bank check informed the jury that "[f]or purposes of this charge, a person who issues a check for which payment is refused by the drawee is presumed to know that such check would not be paid if the person had no account with the drawee at the time of issue." RSA 638:4, IV(b) mandates that, in any felony bad check prosecution, the State "shall prove that the person issued or passed the check knowing or believing that the check would not be paid by the drawee." The statute thus requires the State to prove that the defendant acted "knowingly," in that she was "aware that [her] conduct is of such nature or that such circumstances exist." RSA 626:2, II(b) (2016). Read in isolation, the challenged language created a mandatory presumption that any reasonable juror could have understood to mean precisely what the words state — that the defendant issued the check knowing that the check would not be paid. As in Hall and Sandstrom, the jurors "'were not told that they had a choice,'" or could "'infer that conclusion; they were told only that the law presumed it.'" Hall, 148 N.H. at 399 (quoting Sandstrom, 442 U.S. at 515). Standing alone, the disputed instruction unquestionably "'created an unconstitutional burden-

7

shifting presumption with respect to the element of intent.'" Id. (quoting Franklin, 471 U.S. at 318).

Our conclusion is not altered by a review of the challenged language in the context of the trial court's entire charge. Although the trial court properly instructed the jury as to the State's burden of proving the elements of the offense and the presumption of innocence that must be applied to the defendant, we cannot conclude that a reasonable juror could have ignored the instruction or interpreted it as a rebuttable or permissive presumption. To the contrary, we presume that jurors follow jury instructions. See State v. Sprague, 166 N.H. 29, 37 (2014). Because a reasonable juror could have understood the jury instruction to create a mandatory presumption that shifted the burden to the defendant on the element of intent with respect to the TD Bank conviction, and because the trial court's instructions, read as a whole, did not explain or cure this deficiency, we hold that the instruction violated the defendant's state constitutional right to due process. See Hall, 148 N.H. at 400.

In the context of theft and issuing bad check cases, state courts in other jurisdictions have similarly concluded that jury instructions based upon statutory language creating mandatory presumptions concerning intent violate due process rights. See, e.g., Durham v. State, 74 So. 3d 908, 914-15 (Miss. Ct. App. 2011); State v. Forrester, 657 P.2d 432, 437-39 (Ariz. Ct. App. 1983); State v. Adams, 443 N.E.2d 1047, 1053 (Ohio Ct. App. 1982); State v. Merriweather, 625 S.W.2d 256, 258 (Tenn. 1981). The analyses set forth in these cases support our conclusion that a jury instruction that informs a jury, without explanation or qualification, that a presumption of guilt applies to an element of an offense is unconstitutional. Unqualified mandatory presumptions not only shift the burden of proof to the defendant, they potentially invade the fact-finding function assigned solely to the jury and "conflict with the overriding presumption of innocence with which the law endows the accused." Sandstrom, 442 U.S. at 523 (quotations omitted).

To the extent that the State argues that our harmless error analysis applies to this type of error, and that the error associated with the trial court's jury instruction was harmless beyond a reasonable doubt, we conclude that this argument is insufficiently briefed for our review. See State v. Roy, 167 N.H. 276, 292 (2015) (declining to address an insufficiently developed argument).

III. Insufficiency of the Evidence

We now address the defendant's contention that the State presented insufficient evidence of intent to convict her of either of the issuing bad check offenses. A challenge to the sufficiency of the evidence raises a claim of legal error and, accordingly, we assess the claim under a de novo standard of review.

State v. Houghton, 168 N.H. 269, 271 (2015). When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. We consider all of the evidence, and all reasonable inferences therefrom, in the light most favorable to the State. Id. We also assume "all credibility resolutions in favor of the State." State v. Saunders, 164 N.H. 342, 351 (2012).

The defendant argues on appeal, and the State does not contest, that the State relied solely on circumstantial evidence to prove the defendant's intent at trial. Accordingly, we assume, without deciding, that the intent evidence presented at trial was solely circumstantial. Under these circumstances, the evidence "must exclude all reasonable conclusions except guilt." Houghton, 168 N.H. at 271 (quotation omitted). "Thus, we evaluate the evidence in the light most favorable to the State and determine whether the alternative conclusion is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt." Id. "The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been excluded." State v. Sanborn, 168 N.H. 400, 413 (2015) (quotation omitted). Nonetheless, the defendant "bears the burden of demonstrating that the evidence was insufficient to prove guilt." Id. at 412 (quotation omitted).

RSA 638:4, I, provides:

A person is guilty of issuing a bad check if he issues or passes a check for the payment of money and payment is refused by the drawee, except in cases where a legal stop payment order has been issued or where the drawee refuses payment for any other reason through no fault of the person who issued or passed the check.

In any felony prosecution under the statute, the State is required to prove that the person issued or passed the check "knowing or believing that the check would not be paid by the drawee." RSA 638:4, IV(b).

Viewing the evidence and the reasonable inferences therefrom in the light most favorable to the State, we conclude that the State presented sufficient evidence to prove beyond a reasonable doubt that the defendant committed both offenses. The defendant did not contest that: (1) she passed the checks at issue for the payment of money; and (2) the drawees, the defendant's banking institutions, refused each of the checks. No evidence was introduced at trial suggesting that the exceptions within RSA 638:4, I, applied or were asserted by the defendant. See RSA 638:4, I (providing for exceptions to criminal liability where a legal stop payment order is issued or where drawee refuses payment through no fault of the party issuing check). The sole issue left for the jury to

9

determine was the defendant's intent. The question on appeal is, thus, whether the evidence presented to the jury was sufficient to establish, beyond a reasonable doubt, that the defendant knew or believed that both checks would not be honored. See RSA 638:4, I, IV(b).

With respect to the TD Bank checking account, the evidence established that the defendant exercised control and authorization over the account as the manager of the Wolfeborough Diner, the entity identified as owning the account. An examination of the TD Bank records reveals that between October 14 and November 19, 2014, when TD Bank closed the account, the account had been continuously overdrawn, with dozens of items returned due to insufficient funds. The TD Bank records establish that when the account was closed, it had maintained a negative balance for more than a month and that the account was closed 22 days before the defendant issued the TD Bank check to the Tavern. Moreover, the defendant opened her Citizens Bank account the day after the TD Bank account was closed.

The defendant argues that no evidence was presented indicating that TD Bank notified her that the Wolfeborough Diner account had been closed and, therefore, it is rational to infer that she did not know the status of the account when she issued the check. However, viewing the evidence in the light most favorable to the State, a rational trier of fact could reasonably conclude that the defendant knew or believed that the check would not be honored in light of the substantial history of insufficient funds and returned items before she issued the TD Bank check. Moreover, the defendant opened her personal Citizens Bank account the day after the TD Bank account had been closed, which supports a rational inference that she knew that the TD Bank account had been closed. Although the evidence as to the defendant's intent was circumstantial, a rational juror could have found that all reasonable conclusions based upon the evidence consistent with innocence had been excluded. See State v. Stewart, 155 N.H. 212, 217 (2007) (observing that in many issuing bad check cases a jury may find that the mens rea element is satisfied solely by evidence of insufficient funds at the time the check is issued).

Similarly, the evidence presented at trial was sufficient to establish, beyond a reasonable doubt, that the defendant knew or believed that the second check, drawn from her personal Citizens Bank account, would not be honored when she issued it to the Tavern. When viewed in context and not in isolation, the evidence was sufficient to establish the defendant's intent. First, the defendant opened the Citizens Bank account the day after the closing of the TD Bank account. Second, Citizens Bank records reveal that in the days leading up to the defendant issuing the check to the Tavern, the account maintained insufficient balances to cover the face amount of the check. Third, the Citizens Bank account records also establish that the defendant had a

10

check returned and was charged two overdraft fees in the days before she issued the Citizens Bank check to the Tavern.

With respect to both charges, a rational trier of fact could also have considered evidence surrounding the defendant's conduct after she was notified that both checks had been dishonored.  For example, testimony concerning her statements to the police that "she had taken care of [the debt] already," and her repeated but empty promises to resolve the debt, despite receiving a 14-day letter, are all probative evidence that a rational juror could have considered in determining the defendant's intent when she issued both instruments.  A rational juror could have regarded the defendant's falsehoods and her failure to attempt to remedy the situation, despite promising to do so, as evidence of her consciousness of guilt and intent.  See Etienne, 163 N.H. at 85-86 (considering evidence of defendant's falsehoods and changing stories as evidence of consciousness of guilt).  Given the totality of the evidence, we conclude that the defendant has not met her "burden to demonstrate that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt."  State v. Germain, 165 N.H. 350, 362 (2013) (quotation omitted), modified on other grounds by State v. King, 168 N.H. 340, 345 (2015); see also State v. Gagne, 165 N.H. 363, 367 (2013) (emphasizing that when evidence as to an element is solely circumstantial, the proper analysis is not whether "every possible conclusion has been excluded, but whether other reasonable conclusions have been excluded").

In sum, we reverse and remand the defendant's conviction of issuing the bad check from the TD Bank account and affirm the defendant's conviction of issuing the bad check from the Citizens Bank account.

Affirmed in part; reversed in part; and remanded.

LYNN, C.J., and HICKS and HANTZ MARCONI, JJ., concurred.

11